## JOHN W. BEALS *vs.* JOHN QUINN.

On the trial of an action brought by the assignee of a bankrupt to recover as assets the value of property mortgaged by the bankrupt within six months before he filed his petition, on the ground that the mortgage was void under § 35 of the bankrupt act, U. S. St. 1867, *c.* 176, there was evidence tending to show that the defendant, when he took the mortgage from the bankrupt, had reasonable cause to believe him to be insolvent or to be acting in contemplation of insolvency; but the judge submitted the case to the jury under instructions which did not permit them to find for the plaintiff unless they should find that the defendant had reason to believe him to be then insolvent. *Held*, that the plaintiff had good ground of exception.

TORT by the assignee of the joint and separate estates of Peter and Thomas Keogh, partners, in bankruptcy, for the conversion of their stock of goods mortgaged to the defendant, and bv him taken into possession and sold; sought to be maintained on the ground that the conveyance to the defendant was void under the provision of the bankrupt act, U. S. St. 1867, *c.* 176, § 35, printed in the margin.*

Trial and verdict for the defendant, in the superior court, before *Lord,* J., who allowed a bill of exceptions in substance as follows:

At the trial, these facts appeared in evidence: The defendant on September 26, 1867, sold merchandise to Peter Keogh, and took in payment his four notes, for $225 each, payable respect-

---

* "If any person, being insolvent, or in contemplation of insolvency or bankruptcy, within six months before the filing of the petition by or against him, makes any payment, sale, assignment, transfer, conveyance or other disposition of any part of his property to any person who then has reasonable cause o believe him to be insolvent or to be acting in contemplation of insolvency, .nd that such payment, sale, assignment, transfer or other conveyance is made with a view to prevent his property from coming to his assignee in bankruptcy, or to prevent the same from being distributed under this act, or to defeat the object of, or in any way impair, hinder, impede or delay the operation and effect of, or to evade any of the provisions of this act, the sale, assignment, transfer or conveyance shall be void, and the assignee may recover the property, or the value thereof, as assets of the bankrupt. And if such sale, assignment, transfer or conveyance is not made in the usual and ordinary course ot business of the debtor, the fact shall be *primâ facie* evidence of fraud."

ively in one, two, three and four months. On November 13, 1867, Peter Keogh, to secure the amount unpaid on these notes, which was $850, gave the defendant a mortgage on the whole stock in trade of himself and Thomas Keogh, who were tailors; and also his note for $850, the defendant surrendering the other notes. The defendant caused this mortgage to be duly recorded, and on January 10, 1868, took possession of the mortgaged property, sold it, and received the proceeds, amounting to $1012. The Keoghs filed their petition in bankruptcy in the district court on February 10, 1868, and were adjudged bankrupts on February 14, on which last day their joint and separate estates were duly assigned to the plaintiff. and he on March 17 made demand on the defendant for the proceeds of the sale, but the defendant refused to comply with the demand

" There was also evidence at the trial tending to show that the Keoghs were insolvent, or in contemplation of insolvency, at the time when the mortgage was made; that Peter Keogh made the mortgage with a view to give the defendant a preference over his other creditors; that the defendant, at the time when he took the mortgage, had reasonable cause to believe the Keoghs to be then insolvent, or in contemplation of insolvency; and also that the mortgage was made with a view to prevent a distribution of the property according to the provisions of the bankrupt law.

" The judge instructed the jury that the plaintiff must show that Peter Keogh made the mortgage when insolvent, and, if they found that he was not then insolvent, they should stop all further inquiry and return their verdict for the defendant; that insolvency was not an inability to pay one's debts in full upon a favorable winding up of business, but a man is insolvent when he cannot meet his ordinary liabilities as they mature. (These rulings are not intended to be stated in full, as no exception was taken on these points.) He also ruled that it was not enough for the plaintiff to show that the defendant had reasonable cause to believe that Keogh was in a course which would end in insolvency, but he must have had reasonable cause to believe him to be then insolvent; that if one sees, by the course

of life of his debtor, danger of insolvency, but sees full and ample means to meet his debts, then he does not have reasonable cause to believe such debtor insolvent; that he must have reasonable cause to believe his debtor to be insolvent at the time; that if he has reasonable cause to believe that his debtor is in a course which will render him insolvent, that is not enough (to this ruling the plaintiff excepted); and that the plaintiff must also show that the mortgage was made to interfere with a legal distribution under the bankrupt law.

" The judge was requested to instruct the jury that it was competent for them to infer from the fact of giving a preference an intent to prefer. Upon this he ruled, that, if that were the only fact in the case, it would be so, but it was not his prac-tice to charge upon the effect of a particular fact; that the jury must consider all the facts in the case, and that fact was to be taken with the facts bearing upon that subject, and the jury must determine whether that and the other facts, all taken together, showed an intent to prefer. To this ruling the plain-tiff excepted.

" The judge also ruled that the mortgage was not made in the usual and ordinary course of business of Peter Keogh, and that fact was *primâ facie* evidence of fraud; that, in order to entitle the plaintiff to recover, he must satisfy the jury that Keogh was insolvent at the time the mortgage was made, (no ex ?eption was taken to this ruling,) and that the defendant had reasonable cause to believe him to be then insolvent, and that he took the mortgage to prevent an equal distribution under the bankrupt law, and to prevent its having its free course; that if he had satisfied them on these points their verdict should be for the plaintiff, otherwise for the defendant. To the rulings above specified, the plaintiff excepted."

*J. D. Ball*, for the plaintiff.

*A. R. Brown*, for the defendant.

AMES, J. The case finds that there was evidence tending to show that the mortgagors were insolvent or in contemplation of insolvency at the time when the mortgage was made, and that the defendant when he took the mortgage had reasonable cause

to believe them to be insolvent or in contemplation of insol-
vency. ' This evidence was submitted to the jury with instruc-
tions which were substantially correct as far as they went; and
the only question is, whether anything was omitted which the
plaintiff was entitled to have included in the instructions.

The rulings and explanations on the subject of actual insol-
vency were correct, and are not objected to. So far as the plain-
tiff's case depended upon proof that the Keoghs were insolvent
in fact at the time of the conveyance, the learned judge was
entirely right in saying that it is not enough to show that their
course of life was such that there was danger of insolvency as
a coming result. But, as the case was finally put to the jury,
they were told that the plaintiff, in order to recover, must satisfy
them that the Keoghs were insolvent when the mortgage was
made, and also that the defendant had reasonable cause to be-
lieve them to be then insolvent, and that he took the mortgage
to prevent an equal distribution under the bankrupt law, and to
prevent its having its free course. We think that the effect of
this ruling was to confine the plaintiff to somewhat narrower
limits than the statute contemplates. The question for the jury,
in the actual posture of the case, was not merely whether the
Keoghs were insolvent and the defendant had reasonable cause
to believe them so. It is true that, if the plaintiff had succeeded
in satisfying the jury of that state of facts, he would have been
entitled to a verdict in his favor. But suppose the plaintiff had
succeeded in proving somewhat less than that, namely, that the
Keoghs were insolvent in fact, and also that the defendant had
reasonable cause to believe that they were acting " in contem-
plation of insolvency " when the mortgage was given, the plain-
tiff would have proved, on the subject of reasonable cause of
belief, all that he was bound to prove in order to be entitled to
a verdict in his favor. The debtors might be insolvent in fact,
and the defendant might be found to have no such information
about their financial position as to amount to reasonable cause
of belief on his part that they were insolvent at the time. Yet
he might have such information as would induce a reasonable
man to believe that their business was not profitable, that they

themselves must have so understood it, and that they had it in contemplation to go into bankruptcy. Suppose the debtors had distinctly told him, at the time of the mortgage, " We are not insolvent now ; our property exceeds our debts ; but our business is small, our expenses are large, and we expect to find ourselves in a few weeks in such a situation that we shall petition for the benefit of the bankrupt act." Certainly in such a state of things the defendant could be said to have had reasonable cause to believe that the debtors were acting in contemplation of insolvency, in making the mortgage, though the evidence would fall short of proving that he had reasonable cause for belief that they were then insolvent in fact. The instructions actually given to the jury confined the plaintiff to proof of reasonable cause of belief as to the debtors' actual financial position, instead of permitting him to prove reasonable cause of belief on the defendant's part as to the debtors' purposes and ultimate intentions. In other words, the plaintiff was required to prove somewhat more than the law requires him to prove, in order to make out his case.

It is undoubtedly true that in cases of this kind the distinction here pointed out is usually of not much practical importance. The question usually submitted to the jury as the turning point in the trial is, as to the preferred creditor's " reasonable cause to believe " the debtor to be insolvent in fact at the time of making the payment or giving the security complained of as constituting an unlawful preference. But, in the trial of the present case, evidence was offered by the plaintiff having a tendency to show that there were apparent indications that insolvency was a probable and approaching event, and in our judgment it became material to instruct the jury that the plaintiff was entitled to recover if his proof as to the defendant's " reasonable cause of belief" went no further than cause to believe that the debtor made the conveyance " in contemplation of insolvency," that is to say, with a view, or under an expectation, of petitioning for the benefit of the act. *Buckingham v. McLean,* 13 How. 167. As this instruction was not given, the plaintiff is entitled to a new trial. *Exceptions sustained.*