GEORGE FORBES & another *vs.* JOHN M. HOWE & another.

If a mortgagor, who knows himself to be insolvent, sells and delivers the mortgaged prop erty with the consent, express or implied, of the mortgagee, and afterwards gives another mortgage to secure the same debt which the old mortgage was given to secure, the new mortgage is a preference within the United States bankrupt act of 1867, c. 176.

The fact that a mortgage was given in the usual and ordinary course of business does not necessarily exclude the inference that it was given with intent to prefer.

A mortgage given by an insolvent debtor to secure advances previously made is not purged of its character as an unlawful preference because it was given in pursuance of an agreement on which the advances had been made; nor because the debtor was induced to give

it by the hope of obtaining further credit or means for the continuance of his business; nor because it was intended to make up security which had been reduced by the sale, with the consent of the mortgagee, of property included in a previous mortgage to him, under an understanding that new security should be given.

To show that a mortgagee had reason to believe that the mortgagor was insolvent at the time of making the mortgage, evidence of the mortgagor's financial condition and reputation a year before is admissible; and testimony of the mortgagee, offered in rebuttal, as to his belief of the mortgagor's solvency and intent in making the mortgage, is immaterial.

At the trial of an action brought by the assignee of a bankrupt for the conversion of goods conveyed by the bankrupt to the defendants by a mortgage alleged to be a fraudulent preference, the judge instructed the jury that, if the defendants knew or had reasonable cause to believe that the bankrupt was insolvent, and, with that knowledge, took nearly all his property to secure themselves, knowing that the law required that his property should be divided equally among his creditors, these facts would go far towards supporting the inference that they had reasonable cause to believe that the bankrupt intended the mortgage as a preference. *Held*, that this instruction was not a charge with respect to matters of fact within the Gen. Sts. c. 115, § 5.

Tort by the assignees in bankruptcy of George H. Josselyn, (who filed his petition in bankruptcy on November 11, 1867,) brought against Howe and Alonzo Upham, to recover for the conversion of personal property conveyed October 1, 1867, by Josselyn to the defendants, by a mortgage alleged to be fraudulent under the provisions of the United States bankrupt act, U. S. St. 1867, c. 176 ; 14 U. S. Sts. at Large, 517. Trial and verdict for the plaintiffs in this court, before *Ames*, J., who allowed a bill of exceptions substantially as follows :

The plaintiffs were allowed, against the objection of the defendants, to put in evidence tending to show that, in the fall of 1866, Josselyn's financial reputation and condition were bad.

" There was evidence tending to show that Josselyn was in business with one Moulton, making bricks; that in the latter part of the year 1866 they dissolved partnership, and Josselyn had, of the property of Moulton and Josselyn, some horses, carts, harnesses, brick machines and other apparatus for making bricks; that in the spring of 1867, having this property, Josselyn hired a brickyard and engaged in making bricks in Brookfield; that in May 1867 he represented to the defendant Upham, who was a shopkeeper in Brookfield, that he desired to obtain credit at his shop for goods for the men in his employ and for himself

and also desired Upham to assist him in buying wood to burn his bricks, and agreed to give Upham a mortgage upon his personal property aforesaid, and also upon a kiln of bricks which he had prepared to burn, and Upham was to give him credit at his shop, and also to become responsible to the defendant Howe for wood which Howe was to furnish to Josselyn, to the amount of the security which he held from Josselyn ; and that thereupon, on May 21, 1867, Josselyn executed and delivered to Upham a mortgage upon the property aforesaid, which Upham held in trust for the benefit of himself and Howe. There was conflicting evidence upon the point as to whether Upham held the mortgage in trust for Howe, and the plaintiffs contended that the jury would be authorized from the evidence to find that Upham did not hold the mortgage upon any such trust, but held it as security solely for himself, to secure such advances in wood and goods as they might thereafterwards make.

" There was also evidence tending to show that, from that time until October 10, 1867, Josselyn carried on the business of making bricks, and Upham and Howe made advances of wood and merchandise to him ; that on August 21, 1867, Josselyn, having burned one kiln of bricks and sold a portion of it, and also having another kiln of bricks prepared to burn, made a new mortgage to Upham, upon the same terms and conditions as the former, as security, upon such of the same property as then remained in his possession, and also upon the new kiln of bricks which he had prepared to burn, and thereupon took up the old mortgage ; that, between May 21 and August 21, Josselyn had paid both Upham and Howe money on account, but no settlement had been made between them, but there was a balance then due to Upham and also to Howe from Josselyn ; that on October 1, 1867, the kiln of bricks last mentioned had been burned, a portion of them had been bargained and delivered and were being delivered, and some, but not all, paid for, and a new kiln of bricks had been prepared to burn, and Josselyn, being desirous of obtaining pay for such of the bricks as he had bargained and sold and which were not paid for, in consideration that Upham would release his claim thereon and consent

that he should receive pay therefor, made the mortgage in ques-
tion upon the unburned kiln of bricks, running to Howe and
Upham. Howe testified that the understanding with Josselyn
was, that, after the bricks were sold, Howe and Upham had no
further claim on them or right to them.

" The defendants asked the judge to rule as follows : ' 1. The
plaintiffs must prove that the debtor was insolvent at the time
of making the conveyance; that he made it with a view of giv-
ing a preference to a preëxisting creditor; that he had at the
time reasonable cause to believe himself insolvent; that the
creditor, at the time of receiving the conveyance, had reasonable
cause to believe that the debtor was insolvent and had also rea-
sonable cause to believe that the debtor intended the conveyance
as a fraudulent preference of him against the provisions of the
bankrupt act. 2. If the mortgage in question was given in con-
sideration that Upham would release his claim upon other prop-
erty secured by the mortgage of August 21, and at the request
of Josselyn, in order to enable Josselyn to give title to and re-
cover pay for property, described in that mortgage, which he
had sold, and the transaction was merely the substitution of
one security for another, then the giving of this last mortgage
was not an unlawful preference, even though Josselyn was in-
solvent, and the mortgagees had reasonable cause to believe it.
3. If the mortgage was made in good faith by Josselyn, solely
with intention to obtain means for the continued prosecution
of his business, and with the intention and expectation that he
would be able to do so, and with no intent on his part to give a
preference, the conveyance would not be invalidated although
the parties intended that the mortgage should also operate as
security for the then existing debt. 4. Although the jury are
authorized to infer the intent to prefer from the fact of prefer-
ence, yet they are not at liberty to do so if the evidence of the
facts and circumstances attending the transaction leads to the
conclusion that this mortgage was given in the usual and ordi-
nary course of the business of the parties, and not with the
intent to prefer, but as a substitution of one security for another
released and given up.'

" The judge refused to rule as prayed for, except as to the defendants' first proposition, which was given substantially as prayed for; but gave the following rulings : ' If the understanding was, under the mortgage of August 21, that Josselyn should remain in possession, and be allowed to manufacture bricks and to sell them from time to time, as he should find convenient, and, after manufacturing an additional quantity of bricks, should make a new mortgage including such additional bricks, such agreement on his part would be a mere executory contract, and not a conveyance.   If such new mortgage were to be afterwards given, its validity would depend entirely upon the circumstances under which it was made, and the state of things existing at that time.   If such new mortgage covered, or was intended to secure, anything due from him for advances made previous to its date, it would be a mortgage to secure a preëxisting debt, and open to all objections which could be taken to it on that ground under the provisions of the bankrupt act.   It would make no difference that the new mortgage was intended as a substitute for so much as had been withdrawn from the first mortgage, or merely to keep up the security, if the jury are satisfied that bricks included in the first mortgage had been sold or disposed of with the express or implied consent of the mortgagees, and the new mortgage was called for by the mortgagees for the purpose of restoring the value of their security ; and it would also make no difference that there had been such previous agreement about keeping up the security by giving such new mortgage.   If the sales were made with the mortgagees' consent, express or implied, and the new mortgage was given by Josselyn in order to get permission to collect any money due on such sales, it would not have the effect of rendering the new mortgage any the less a security for a preëxisting debt.'

" Thereupon the defendant asked the judge to give the following additional rulings: ' But if the new mortgage was given in consideration that the mortgagees would release all claim to bricks which had been bargained and delivered, but not paid for, and that Josselyn might receive pay for them, then it would be a substitution of one security for another   If the jury are sat-

isfied upon the evidence that the mortgagees did not intend to release their security under the mortgage of August 21 until they received new security therefor, and the new security was given in consideration of such release, and the new security was intended as a substitution for the old, it would make no differ· ence that the bricks had been removed, sold and delivered, if the same had not been paid for before the making of the new mortgage, although they were removed with their knowledge and without any objection on their part;' which rulings the court refused to give.

" The defendant Upham was called as a witness in his own behalf, and was asked the following question : ' At the time of taking the mortgage in question, what was your belief as to Josselyn's intention in making the mortgage in question, and also what was your belief as to his solvency?' The plaintiffs objected, and the judge excluded the evidence.

" The defendants asked to have the following questions submitted to the jury: ' Did Upham intend to release his claim upon bricks sold and unpaid for without getting other security for the same; and did Upham release his claim to bricks sold and unpaid for, and consent that Josselyn should perfect a title to the same in the vendee, and receive pay for the same in consideration of giving this mortgage?' The judge refused to submit these questions, but submitted the following : ' Did Josselyn, between August 21 and October 1, sell and deliver bricks with the express or implied permission and consent on the part of Upham ?' to which the jury answered ' Yes.'

" The judge also instructed the jury as follows: ' If Howe and Upham knew, or had reasonable cause to believe, that Josselyn was insolvent, and if they, with that knowledge, took nearly all his property to secure themselves, and at the same time knew that the law required that his property should be divided equally among his creditors, these facts would go far towards supporting the inference that they had reasonable cause to believe that Josselyn intended this mortgage as a preference.'

" To all which rulings and refusals to rule the defendants except."

*G. F. Verry*, for the defendants. The second and fourth of the original prayers for instructions, and the additional prayers, should have been granted. *Harris* v. *Rickett*, 4 H. & N. 1. *Hutton* v. *Cruttwell*, 1 El. & Bl. 15. *Stevens* v. *Blanchard*, 3 Cush. 169. The third of the original prayers should have been granted. *Jones* v. *Howland*, 8 Met. 377, 385. *Ex parte Jordan*, 9 Met. 292. *Seaman* v. *Stoughton*, 3 Barb. Ch. 344. *Nary* v. *Merrill*, 8 Allen, 451. *Metcalf* v. *Munson*, 10 Allen, 491. *Kingman* v. *Tirrell*, 11 Allen, 97. The last instruction given was a charge on a matter of fact, and contrary to the Gen. Sts. *c.* 115, § 5. *Commonwealth* v. *Barry*, 9 Allen, 276.

*P. E. Aldrich*, for the plaintiffs.

WELLS, J. In order to invalidate a conveyance of property, under the bankrupt law of the United States, § 35, on the ground that it was made as a preference in fraud of the act, it is requisite that it should appear, 1st, that the debtor was insolvent at the time of the conveyance, or that he made it in contemplation of insolvency; 2d, that he did it with a view to give a preference to a creditor; 3d, that the party taking the conveyance, or to be benefited by it, had, at that time, reasonable cause to believe him to be insolvent; and 4th, that such party had reasonable cause to believe the conveyance to be made in fraud of the provisions of the act. The first instruction prayed for embraced all these requisites, and was given by the judge at the trial.

The defendants might have been entitled to the second instruction prayed for, if it had been supported by the facts of the case. *Stevens* v. *Blanchard*, 3 Cush. 169. But it did not appear that the mortgage of October 1 was given to replace any other security then given up; nor that the property, then for the first time covered by mortgage, was merely substituted for other property which was at the same time released from the mortgage of August 21. The defendants attempted to maintain the position that, although certain property covered by the previous mortgage had been sold and delivered by the mortgagor, yet the defendant Upham had not released it from his mortgage, and that he still had a lien upon it, or upon the unpaid price of sale

and that the new mortgage was given in consideration of a release of this claim, by way of substitution for security thus surrendered. But the jury found upon this question, specially submitted to them, that the sale of that property was made " with the express or implied permission and consent on the part of Upham." If so, his lien under the mortgage of August 21 was gone, and the mortgage of October 1 was a new security, and not a mere substitution of securities. It results from this finding of the jury that the defendants were not prejudiced by the refusal of this prayer.

The third instruction prayed for includes the main fact upon which the whole case depended, to wit, the intent to give a preference. By refusing to give that instruction, in the form in which it was presented, the court did not intend, and could not fairly be understood, to rule to the contrary of the proposition it contained. The presiding justice, having already instructed the jury that the plaintiff must show an intent to give a preference, on the part of the debtor, might well have regarded a repetition of the proposition in another form unnecessary.

The fourth prayer stands in the same position as the third, so far as it rests upon the element inserted among its propositions, that the transaction was " not with the intent to prefer;" and in the same position with the second, so far as it rests upon the proposition that it was merely " a substitution of one security for another released and given up." That this mortgage " was given in the usual and ordinary course of the business of the parties" would not save it, if the intent to prefer existed; and would not exclude the inference of such intent, which might be drawn from all the circumstances under which it was given. That a payment or transfer of the property was made out of the ordinary course of business of the party making it, is sometimes ground for inference of intent to prefer or to defraud. We do not think that the mortgage of his brick kiln by the debtor, in this case, gave ground for any inferences, or derived any character from the usual and ordinary course of the business of the parties, which required the court to give the instructio asked for.

The instruction that an agreement for future security " would be a mere executory contract, and not a conveyance," was correct, as well as that the validity of such new mortgage " would depend entirely upon the circumstances under which it was made, and the state of things existing at that time." *Blodgett* v. *Hildreth*, 11 Cush. 311. *Paine* v. *Waite*, 11 Gray, 190. *Simpson* v. *Carleton*, 1 Allen, 109. So also was the instruction that if the new mortgage covered, or was intended to secure, anything due for advances made previous to its date, it would be a mortgage to secure a preëxisting debt, and open to all objections which could be taken to it on that ground. The fact that the debtor was induced to give such security for debts previously contracted, by the hope and expectation of thereby obtaining further credit and means for the continued prosecution of his business, does not make it any the less a preference; nor does it rebut the inference, otherwise deducible from the facts, that it was intended to be a preference. *Denny* v. *Dana*, 2 Cush. 160. If so intended, it would make no difference that it was the purpose of the parties merely to renew or make up the security which had been reduced by previous sales of property included in the earlier mortgage; nor that it was done in fulfilment of previous agreements that it should be done. An agreement to give security for a debt due, or to be contracted, imposes no higher legal obligation upon the debtor than his promise of payment, involved in the contracting of the debt. And his fulfilment of the one is equally open to objection as a preference as is his fulfilment of the other. The instructions were correct in these particulars.

The case of *Jones* v. *Howland*, 8 Met. 377, relied on by the defendants, turned upon the question whether the sales which it was sought to avoid were made " in contemplation of bankruptcy," in the sense of the United States bankrupt act of 1841. The terms of that statute were held to require that the intent which would make void a sale must be an intent to give a preference in contemplation of bankruptcy. But the present bankrupt act avoids a sale made with a view to give a preference, if the debtor at the time be in fact insolvent, although he may not

contemplate bankruptcy. Under this statute, we think the phrase " with a view to give a preference " must be construed some- what less strictly, so as to include an intent to give one creditor any advantage over others in respect of payment or security of his debt.

The instructions prayed for, after the charge had been made, present the same questions in a different form. The position of the defendants appears to be, that if the debtor was influenced to give the mortgage by some other consideration or inducement, beyond and aside from the purpose to secure an existing debt, such circumstance will repel the inference that he intended to give his creditor a preference. But this is directly opposed to the opinion of the court as given in *Denny* v. *Dana,* before re- ferred to. Besides, the assumption contained in these prayers, that the new mortgage was given in consideration of the release of a claim, under the prior mortgage, upon bricks sold and re- moved, but not paid for, is shown by the special finding of the jury, to have been without foundation; and thus all ground of exception for their refusal is removed.

The evidence of Josselyn's financial condition and reputation in 1866 was competent upon the question of his solvency or insolvency a year later, and as tending to show what means the defendants had to know, or cause to believe, that he was insol- vent in October 1867.

If the mortgagee had reasonable cause to believe that Jos- selyn was insolvent, it is immaterial whether he did in fact be- lieve it or not. The same is true of his belief as to Josselyn's intention in making the mortgage. The question to Upham, as to his actual belief in regard to those particulars, was there- fore properly excluded.

It is contended that the instructions set forth in the last clause of the bill of exceptions are obnoxious to the objection of being in the nature of a charge " with respect to matters of fact." But we think it is so in appearance only, and not in substance or effect. The proposition of " reasonable cause to believe" is one of fact, to be established by proof and found by the jury. In order to render a verdict for the plaintiff, it was necessary for

the jury to find that the defendants had reasonable cause to be-
lieve that Josselyn intended the mortgage as a preference. His
intention could be known only by inference from his conduct.
It is a principle of law, often stated to a jury by the court, that
a man may ordinarily be presumed to intend that which is the
natural and probable consequence of his acts. The intent to
prefer, on the part of Josselyn, might therefore be properly in-
ferred from the fact of preference. It was competent for the
jury to find that that intent was so plainly inferrible from the
acts of Josselyn, known to the defendants, as to amount to rea-
sonable cause to believe. If so, they might properly impute to
the defendants such reasonable cause to believe that the mort-
gage was intended by Josselyn as a preference to them. We
do not perceive that anything more than this was conveyed by
the somewhat vague terms in which this instruction is expressed.

*Exceptions overruled.*