## Case No. 10,674.

### PAINE v. CALDWELL.

[1 Hask. 452; 6 N. B. R. 558; 5 Am. Law T. Rep. U. S. Cts. 311; 29 Leg. Int. 284; 6 Alb. Law J. 291.] [1]

District Court, D. Maine. Dec., 1872.

COURTS—FEDERAL JURISDICTION — BANKRUPTCY— RESIDENCE—SERVICE ON ATTORNEY.

1. The district court, in equity, has no jurisdiction over a citizen of Massachusetts, neither found within nor having property within this district, to relieve from a preference in fraud

[1] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission. 6 Alb. Law J. 291, contains only a partial report.]

of the bankrupt act at the suit of an assignee in bankruptcy appointed in this district.

[Cited in Re Litchfield. 13 Fed. 868; Romaine v. Union Ins. Co., 28 Fed. 636.]

2. Nor does the recovery of a judgment in the courts of Maine and the collection of it in fraud of the bankrupt act [of 1867 (14 Stat. 517)], by a citizen of Massachusetts, neither found here, nor having property here. but acting through a resident attorney, upon whom service was made in this suit, give this court jurisdiction.

Bill by the assignee of a bankrupt, to recover from [Henry L. Caldwell] a citizen of Massachusetts the amount of a judgment recovered by him in the courts of Maine against his debtor, the bankrupt, and collected in fraud of the bankrupt act through an attorney resident in Maine, upon whom process was served. The respondent appeared, and pleaded that the court had not jurisdiction over him, inasmuch as he was a citizen of Massachusetts, neither found within, nor having property within the jurisdiction of the court. As to the sufficiency of the plea, the cause was heard.

[2] [Albert W. Paine, pro se, contended that the bill was sustainable by virtue of the provisions of the bankrupt act, the first section of which gives to the district court original jurisdiction in all matters and proceedings in bankruptcy, extending to "all cases and controversies arising between the bankrupt and the creditor, to the collection of all the assets of the bankrupt * * * and to all its acts, matters and things to be done under and by virtue of the bankruptcy, until the final distribution and settlement of the estate, and close of proceedings in bankruptcy." The second section also giving concurrent jurisdiction with the circuit court, "of all suits at law or in equity, which may or shall be brought by the assignee, * * * against any person claiming an adverse interest, * * * touching any property or rights of property of the bankrupt," &c. The studied manner in which these sections are framed to include every cause of action; without limitation, seems to leave no doubt of the intention of congress to embrace claims such as now involved.

[The clause providing for such "jurisdiction in their respective districts" in the first section means very clearly the same as the similar clause in the section, which provides that said "courts of the United States, within and for the districts where the proceedings in bankruptcy shall be pending," shall have the jurisdiction mentioned, the whole tenor of which seems to add force to the argument, adduced from the other language already cited, to limit the right of the assignee in all suits to that district "where the proceedings in bankruptcy shall be pending." These clauses do not in any way limit the right of action to any cause short of "all cases" in the first section, and " any person" in the second. When the statute

[2] [From 6 N. B. R. 558.]

has failed to make such limitations, there is no warrant for the court to do it.

· [Consistent with the construction have been all the decisions thus far known to have been made on this subject under the act. What seems to be conclusive on the point in issue is the uniform rule which the courts have established, that the assignee cannot maintain suit in any other of the district courts, except only in that "where the proceedings in bankruptcy shall be pending." The converse would seem to follow as matter of course. In re Richardson [Case No. 11,774]; Markson v. Heaney [Id. 9,098]; Shearman v. Bingham [Id. 12,733]; In re Penn [Id. 10,927]. See, also, Bump, Bankr. (3d Ed.) 162–182, 244–256.

[The general language of the act, which by its unmistakable language gives the jurisdiction claimed, can only be ruled away on the supposition that congress might not intend to give the assignee any remedy against parties out of the district, or that they forgot to provide for it. Both hypotheses are inadmissible. The language must then control, and if thereby any inconvenience or hardship results, congress and not the court must furnish the remedy. Attention was also called to the fact stated in the bill, that the money sued for, having been collected on an execution recovered in the state court of Maine within the district, by an authorized attorney of that court, the court would sustain their jurisdiction by the service made upon the attorney, and the ·case of Marco v. Low, 55 Me. 549, and cases therein referred to was cited.] [2]

Almon A. Strout, for respondent.

FOX, District Judge. The question presented is one of jurisdiction. Can the district court sustain a bill in equity brought by an assignee in bankruptcy in this district against a citizen of Massachusetts not found in this district and who has no property therein, the bill being instituted to recover back the amount received from a preference in fraud of the act by the respondent obtaining a judgment against the bankrupt before the supreme court of this state and collecting the same within four months of the commencement of proceedings in bankruptcy, the bankrupt being known by the respondent to be insolvent? Service of the subpœna was made on the respondent in Massachusetts, and he appears and objects to the jurisdiction of the court.

By the judiciary act it was provided "that no person shall be arrested in one district for trial in another in any civil cause before the circuit or district court, and no civil action shall be brought before either the circuit or district courts against an inhabitant of the United States by any original process, in any other district than that whereof he is an inhabitant or shall be found at the time of serving the writ."

In Picquet v. Swan [Case No. 11,134], Judge Story, in a very elaborate opinion, announced as the result of his examination "that by the general provisions of the laws of the United States, the circuit courts could issue no process beyond the limits of their districts; that independent of positive legislation, the process can only be served upon persons within the same districts."

In Toland v. Sprague, 12 Pet. [37 U. S.] 329, the supreme court of the United States held, that merely by an attachment on trustee process of the estate of a defendant who resided in Gibraltar, the circuit court did not acquire jurisdiction over the party; that the circuit court of each district sits within and for that district, and is bounded by its local limits, and that whatever may be the extent of their jurisdiction over the subject matter of suits in respect to persons and property, it can only be exercised within the limits of the district. Congress has not in terms authorized any original civil process to run into any other district, with the single exception of subpœna for witnesses, and the court say, "we think that the opinion of the legislature is thus manifested to be, that the process of a circuit court cannot be served without the district in which it is established without the special authority of law therefor."

In Herndon v. Ridgway, 17 How. [58 U. S.] 424, the supreme court decided that the district court in Mississippi, which probably had the jurisdiction of a circuit court, could not entertain a bill to compel parties to interplead who are not found in the district; that jurisdiction over parties is acquired only by service of process within the state, or by a voluntary appearance.

These authorities are conclusive that this court, prior to the passage of the bankrupt act, did not have the jurisdiction claimed for it; and I do not understand it to be very strenuously contended by the complainant in his learned argument, that the district court derived the authority from the judiciary act or any other law of congress, than the bankrupt act itself. He argues, that this authority is found in the first and second sections of the act, conferring, as he says, on this court exclusive jurisdiction in all matters pertaining to the estate of the bankrupt, subject to a concurrent jurisdiction in certain matters with the circuit court under the provisions of the second section. For the purpose of this inquiry it may be conceded, that the district court in which the proceedings in bankruptcy are originated, has within its district exclusive jurisdiction over the estate of the bankrupt, although many of the state courts, under the present as well as under the former act, have sustained actions brought by assignees for the recovery of debts due to the estate, as well as for the conversion of property by transfers in fraud of the bankrupt act. Beals v. Quinn, 101 Mass. 262;

[2] [From 6 N. B. R. 558.]

Forbes v. Howe, 102 Mass. 427; Peiper v. Harmer [8 Phila. 100].

This concession does not control or even afford us much aid in reaching a conclusion upon the question now before us, as the claim here is not that the district court has exclusive jurisdiction of bankrupt matters within its own district, but that it is not limited by its own district, and may extend beyond its territorial limits and by its process bring before it parties from the most remote state in the Union. Such authority should be conferred by positive direct legislation, and cannot be derived from inference or implication, or from any general indefinite expressions found in the law.

The first section of the bankrupt law confers and defines the jurisdiction of the district court, "that the several district courts of the United States be, and they hereby are constituted courts of bankruptcy, and they shall have original jurisdiction in their respective districts in all matters and proceedings in bankruptcy."

In the opinion of the court, the words "in their respective districts," found in this provision of the act are not without effect; they must receive their usual ordinary signification, and it is believed, manifest a purpose and intent in congress to restrict and limit the authority and jurisdiction of the district courts in bankruptcy within their own districts in accordance with the practice as it then was, and not to confer upon them a jurisdiction throughout the United States in utter conflict with all prior legislation and the settled policy of congress. The jurisdiction in bankruptcy is conferred on the district courts by the expression, "they shall have original jurisdiction in their respective districts;" this is the grant; by it alone it has jurisdiction and authority; and whilst its authority does extend to all matters in bankruptcy, and there is no limit to the subject matter over which the court has jurisdiction, it is expressly confined and restricted in its exercise to the limits of its own territory, and enjoys no other or greater power or authority outside of its district than it had before the bankrupt act was passed; and it seems necessary to utterly reject and expunge from the provision these words of limitation, prescribing its own district as its bounds and extent of its jurisdiction, before it can be declared that by this grant, a jurisdiction is bestowed on the court co-extensive with the Union.

It is said that these words do not limit the jurisdiction, but only require that the court shall act within its own district; that in the exercise of its jurisdiction it has control over all matters and proceedings in bankruptcy, and after a specific enumeration of certain matters, that the first section of the act declares "that the jurisdiction shall extend to all matters and things to be done under and by virtue of the bankruptcy until the final distribution and settlement of the estate and the close of proceedings in bankruptcy." This language must be taken in connection with that before cited, and is controlled by it, and cannot be considered as extending the jurisdiction of the court beyond its district. If the construction put by the court upon the grant to the district courts "of original jurisdiction in their respective districts" is erroneous, I am still of opinion, that this language, broad and comprehensive as it is, extending its jurisdiction to all matters and things to be done under the bankruptcy, should not be held to authorize it to summon before it parties from without its district.

If congress had intended to grant such unlimited authority to the district courts, as to authorize this court sitting in Maine to issue its process and summon before it a citizen of California or Oregon, it is believed that clear, positive, unambiguous language would have been employed, manifesting by an express grant beyond all question that such was the intent, and not by any general uncertain legislation here authorize a practice in utter conflict with the policy of all prior legislation. The language employed in the first section was proper and necessary to confer on the district court full and complete jurisdiction over the estate of the bankrupt; it is none too broad and comprehensive in its relation to the subject matter, and there does not appear to be any occasion for giving to it a construction which will extend the jurisdiction of the courts so much beyond its well established boundaries.

In repeated instances it will be found that general language of this nature has been employed by congress in conferring upon the federal courts jurisdiction, and in every instance have the courts held, notwithstanding the generality of the language, that they were restricted to their own respective districts. In Picquet v. Swan [Case No. 11,134], before cited, Judge Story says, "The process acts have prescribed the forms of process and modes of service to be according to the state jurisprudence; but they do not appear to me to be intended to enlarge the sphere of jurisdiction of the circuit courts. I cannot judicially say that the general phraseology of these process acts ought to receive a more extensive interpretation so as to break down or interfere with the policy of the judiciary act, founded as it seems to me on principles of public law, public convenience and immutable justice."

In Toland v. Sprague [Case No. 14,076], it was claimed that congress, having adopted the forms of writs and modes of process in the several states, had thereby authorized the circuit court of Massachusetts to take jurisdiction by trustee process against a non-resident not found in the district; but the supreme court held, that the acts of congress, adopting the state process, adopt the form and mode of service only so far as the persons are rightfully within the reach of such process.

and did not intend to enlarge the sphere of the jurisdiction of the courts.

The case of Ex parte Graham [Case No. 5,-657], was a writ of habeas corpus to discharge from imprisonment the petitioner, who had been arrested in Pennsylvania on a warrant against him in a prize cause issued by the circuit court of Massachusetts. Judge Washington says:

"The question turns upon the authority of the district or circuit court of one district to issue its process into any other district to compel the appearance of a person residing or found within the latter jurisdiction before the court from which the process issued, or to stand committed for any alleged contempt of that court. It is admitted that these courts, in the exercise of their common law and equity jurisdiction, have no authority generally to issue process into another district, except in cases where such authority has been specially bestowed by some law of the United States. These provisions (Act 1789 [1 Stat. 73]) appear manifestly to circumscribe the jurisdiction of those courts, as to the person of the defendant, by the limits of the district where the suit is brought, and that the process of those courts was considered by the legislature to be bounded by the same limits is obvious from the subsequent acts passed. But it has been argued, that these restraints are incompatible with the essential jurisdiction of an admiralty court, more especially in prize causes. That the laws of the United States authorize the distinction which is contended for, has not, and it is confidently believed cannot be shown. It is true that the 9th section of the judiciary act gives to the district court exclusive original cognizance of all causes of admiralty and maritime jurisdiction without limitation; and it is not less true that the 11th section of the act gives to the circuit court original cognizance of all suits of a civil nature at common law and in equity, where an alien is a party or the suit is between a citizen of the state where the suit is brought and a citizen of another state, equally unlimited except as to the amount. But the jurisdiction of these courts, though unlimited as to the subject matter of which they have cognizance, by any express declaration of the legislature is nevertheless limited in point of locality, as well by the general principles of law which our courts acknowledge as rules of decision, as by the express provisions of the 11th section. As to the first, it will be acknowledged that there is no law of congress which limits the jurisdiction of the courts by the nature of the suits of which they have cognizance. By what law then is it that actions of ejectment, dower, &c., can be brought only in the district where the land lies? If the defendant be served with process in the district where the suit is brought, neither the 11th section nor any other provision in the act of congress has restrained the jurisdiction of the court in the supposed cases.

The only answer to the question is, that the want of jurisdiction is the result of certain general principles of law acting upon the particular subject. In like manner, the jurisdiction of these courts when sitting in admiralty or prize causes is limited by those general principles which apply to courts of admiralty in England and the United States, as well as in other countries. Though bounded only by the nature of the causes over which they are to decide, and not in any respect by place, it is nevertheless essential to the exercise of this jurisdiction by any particular court, that the person or thing against whom or which the court proceeds should be within the local jurisdiction of such court," etc.

This extract from the opinion of that learned judge sets forth so clearly by illustration and argument that the authority now claimed for the district court does not exist, that I have preferred to present it at length in the very words of the court, rather than in any way to detract from its effect by any abridgment of it. The judiciary act gave to the district court exclusive original cognizance of all civil causes of admiralty and maritime jurisdiction, without qualification or limitation of any kind; this language was as comprehensive as any to be found in the bankrupt law, and yet, the court had no doubt that its jurisdiction was limited and bounded by the locality of the district, and this decision should control the result of the present suit.

It is urged that if the district court does not possess this power and authority, an assignee is without remedy to enforce his claims in behalf of the estate against non-residents of his district and not found therein. But such, I apprehend, will not prove to be the case, as it is shown that the state courts are ready to exercise jurisdiction over their own citizens in suits against them in behalf of assignees in bankruptcy; and in most cases the authority of the circuit court, in the district where the delinquent resides, could be appealed to by the assignee, as he would ordinarily be a citizen of another state; and if these should not afford the needed redress, congress could very easily supply the deficiency by conferring on the several district courts authority to sustain suits by assignees from other districts auxiliary to the original proceedings in bankruptcy.

I am satisfied that the authority here claimed for the district courts to issue their process against parties in remote districts would be attended with the most dangerous consequences, and would frequently prove an instrument of oppression and extortion; and if it did exist and was frequently called into exercise would soon overthrow the bankrupt act. Assignees having nothing personally at risk, as the expense would ordinarily be a charge upon the estate, would, I have no doubt, very frequently institute proceedings in their own district against citizens of other

remote districts, with whom the bankrupt may at some time have had dealings, trusting to the defendant's willingness to pay a considerable amount in the way of compromise rather than be subjected to the expense and vexations of a protracted law suit at a distance and in a place where he may be a stranger and unknown, and in which, if he proved successful, he would necessarily incur large expenditures which are not recompensed in any taxation of costs. In some instances the defendant might be arrested by the marshal of the district where he resides and thrown into prison, and there detained a long time to await the result of a controversy in a distant district, and to which he was debarred from giving his personal attendance by reason of his imprisonment. The whole proceeding in the exercise of such a jurisdiction would be attended with difficulties, which as Judge Washington in the case before cited says, "nothing but an act of congress can remove." I hold in the language of Mr. Justice Story, that this limitation of the jurisdiction of the court "is founded on principles of public law, public convenience, and immutable justice;" and I trust the day may never come when any such baneful authority will be conferred on this or any other court.

No decision has been cited sustaining the position of the complainant, and the opinion of Benedict, J., in Re Hirsch [Case No. 6,529], is apparently against it. In Markson v. Heaney [Id. 9.098], Dillon, J., alludes to the point, but refrains from giving any opinion upon it.

The bill sets forth that the fraudulent preference obtained by respondent was by means of a judgment recovered by him against the bankrupt, before the supreme court of the state, and which was paid within four months of the commencement of bankruptcy proceedings. Service of the subpœna in the present suit was made on the attorney who acted for the defendant in obtaining this judgment, and it is argued that the defendant, having resorted to and availed himself of the courts in Maine to obtain this fraudulent judgment, continues subject to the authority of the courts in this state including the district court in bankruptcy, and cannot withdraw from the state with the fruits of his judgment without remaining amenable to the courts in any ulterior proceedings arising from his original suit.

The complainant through his learned counsel relies on Marco v. Low, 55 Me. 549, in which it was decided that the supreme court of Maine could, as a court of equity, enjoin the respondent from further prosecuting in that court, as a court of law, a writ of entry in favor of the respondent against the complainant, notwithstanding the respondent may not have resided or personally been within the state since the commencement of the bill. With that decision I entirely concur, and the principle on which it rests has

been repeatedly sustained by the federal courts.

In Freeman v. Howe, 24 How. [65 U. S.] 460, it is stated in the opinion of the court, "The principle is, that a bill filed on the equity side of the court to restrain or regulate judgment or suits at law in the same court, and thereby prevent injustice or an inequitable advantage under mesne or final process, is not an original suit, but auxiliary and dependent, supplementary merely to the original suit out of which it had arisen, and is maintained without reference to the citizenship or residence of the parties." So Judge Story, in Dunlap v. Stetson [Case No. 4,164], says: "Such suits are not original, and are properly sustainable in that court which gave the original judgment and has it completely under its control."

This jurisdiction attaches only to the court in which the original suit is, or was pending, and the present is the first attempt, so far as this court is advised, to claim that a citizen of another state, who has recovered in a state court an inequitable judgment, thereby conferred on the federal courts, in the district in which the judgment was recovered, jurisdiction over him with authority to sustain a bill in equity against him in behalf of the defendant in the original suit, although not found in the district, and afford such redress as equity and good conscience might ordinarily require, if the original suit had been instituted in the federal court instead of the state court.

Bill dismissed.