See In re King [Case No. 7,781], and cases cited in note.

## Case No. 12,899.

### SINGER v. SLOAN et al.

[11 N. B. R. 433;[1] 2 Cent. Law J. 141.]

District Court, E. D. Missouri. Feb., 1875.[2]

BANKRUPTCY — AMENDED ACT — MALA FIDES — "REASONABLE CAUSE TO BELIEVE."

1. In cases of compulsory bankruptcy actually commenced, though not determined, prior to

[1] [Reprinted from 11 N. B. R. 433, by permission.]
[2] [Affirmed in Case No. 12,898.]

December 1, 1873, the amendments of June 22, 1874 [18 Stat. 178], do not apply.

[Cited in Thomas v. Woodbury, Case No. 13,-916.]

2. The broad distinction between "knowledge" and "reasonable cause to believe" has been too well recognized to be ignored, and congress intended, by the amendments of June 22, 1874, to affect only such transactions as are evidently mala fide, i. e., those tainted with actual knowledge. Although all compulsory cases are, by the express terms of the act, as amended June 22, 1874, if instituted after December 1, 1873, subject to its provisions, yet they are not so subject as to adjudications had thereon prior to the date of the said amendatory act.

[Cited in Crump v. Chapman, Case No. 3,455.]

3. In voluntary cases undetermined, as well as in compulsory cases, section 9 of the amendatory act governs.

4. In reducing the time within which conveyances, preferences, etc., are to be invalidated, and in giving section 10, of the amended act, no force until after the respective two and three months had expired, congress designed that past transactions, in cases under section 35 of the former act [14 Stat. 522], should not be interfered with so far as time was an element.

[Cited in Bradbury v. Galloway, Case No. 1,-764.]

5. Section 11 of said amendatory act is also amendatory of section 35 of the former act, and is designed to change the rule as to reasonable cause to believe, but cases previously brought, or acts previously done, are not affected by this section.

[Cited in Re Montgomery, Case No. 9,732; Warren v. Garber. Id. 17,196; Barnewall v. Jones, Id. 1,027.]

6. Section 12 of said amendatory act imports the element of guilty knowledge into compulsory cases of bankruptcy, and the whole section is made applicable to all cases commenced since December 1, 1873; hence, any construction put upon section 11 of the said amendatory act which leaves section 35 of the former act unamended as to such cases, would render the amendatory act inconsistent with itself.

[This was a proceeding by B. Singer, assignee of Towle, against O. C. Sloan and others, to have a certain deed set aside. Heard on demurrer to the bill.]

Binswanger & Jones, for assignee.
Geo. D. Reynolds, for defendant Sloan.

TREAT, District Judge. On the 21st day of January, 1874, a petition in bankruptcy was filed against Towle by some of his creditors, and on the following 3d of February he was adjudged a bankrupt. The plaintiff is his assignee. On the 18th of December, 1873, said Towle and wife executed a deed of trust to secure the defendant, Sloan, for alleged antecedent indebtedness. This bill was filed December 9, 1874, to have said deed set aside as in contravention of the bankrupt act, on the ground that Towle, at the date of its execution and delivery, was insolvent, and that Sloan had reasonable cause to believe, etc. The defendant demurs to the bill on the theory that the allegations should conform to the amendatory act of June 22, 1874, and charge that the defendant knew a

fraud on the act was intended. Whether the construction put upon the latter act in the case of Hamlin v. Pettibone [Case No. 5,-995], be correct or not, it evidently does not cover this case; although the views of Judge Deady, in Brooke v. McCracken [Id. 1,932], go far enough, if sustained, to defeat this demurrer. In both of those cases it was asserted, or at least very strongly intimated, that the insertion of the words "know," etc., in sections 35 and 39, does not vary the requirements or force of the statute as it previously stood; for those learned judges intimate that a man is to be presumed in law to know what he had reasonable cause to believe.

The broad distinction, however, between "knowledge" and "reasonable cause to believe," if not apparent on a simple repetition of the terms, has been too well recognized by many decisions, even of the United States supreme court, to be ignored. See Foster v. Hackley [Case No. 4,971]; Graham v. Stark [Id. 5,676]; In re Wright [Id. 18,071]; In re Arnold [Id. 551]; In re McDonough [Id. 8,775]; Merchants' Nat. Bank v. Truax [Id. 9,451]; Forbes v. Howe, 102 Mass. 427; Scammon v. Cole [Case No. 12,433]; Darby v. Lucas [Id. 3,573]; Id., 15 Wall. [82 U. S.] 410; Buchanan v. Smith, 16 Wall. [83 U. S.] 277; Walbrun v. Babbit, Id. 577; Toof v. Martin, 13 Wall. [80 U. S.] 40. Indeed, the marked distinction runs through nearly every case; and generally has been the point on which the case turned. Besides, the amendment is supposed to effect a needed change, and in the light of the then existing decisions, the change made is serious and important. It will, in cases at law, devolve on the jurors the duty to find that knowledge existed, and not merely reasonable cause to believe a fact to be ascertained by them. It cannot be held that a man knows a fact, when there exists only suspicious or surrounding circumstances, which, if thoroughly investigated, might discover the truth. Courts have repeatedly held, concerning the phrase "reasonable cause to believe," that the preferred creditor could not escape by willfully shutting his eyes to what would have been discovered had he made the inquiry which a prudent man would have done —that the mere existence of such suspicious circumstances as should have induced inquiry, would, if seen, or called to the attention of the creditor, bring him within the force of the statute. It is apprehended that far more is now required. The rule, as it previously stood, was somewhat vague and uncertain. Often it occurred that, on precisely the same testimony, two jurors would reach directly opposite conclusions, even when the court carefully defined the meaning of the phrase. Congress, being aware of the stringency of the legal construction given, and desiring to remove so stringent and somewhat arbitrary a rule, amended the law in order to affect only such transactions as

are evidently mala fide—that is, such as are tainted with actual knowledge.

The next important question presented by the demurrer, is, what class of cases is affected by the amendments of June 22, 1874? In compulsory cases, actually commenced, though not determined, prior to December 1, 1873, Judge Hopkins held—Hamlin v. Pettibone [supra]—that the amendments do not apply. The amended section, 39, by its terms, covers all compulsory cases from December 1, 1873, and in that opinion, although the point is not decided, perhaps, yet it is strongly intimated that a distinction exists between two cases brought by assignees of voluntary and involuntary bankrupts. The case before him required for this decision this important point, viz.: whether, in an involuntary case, where an adjudication had been had, and a suit by the assignee was pending against a preferred creditor, prior to December 1, 1873, the amendment had any application. That point he decided in the negative. The opinion of Judge Deady, however, is, that the amendments of section 35 are entirely prospective, so that no case brought before, or act done before, June 22, 1874, is within the purview of the latter act, but is to be considered as falling within the provisions of section 35, as it previously stood. If the opinions in those two cases are correctly understood, such seems to be their scope. It is evident that the terms of the act of June 22, 1874, leave many questions open to judicial construction. Section 9 embraces both compulsory and voluntary cases, and does not in terms state when that section shall take effect—whether it shall be retroactive or prospective, whether it shall apply to pending cases, or, if to pending cases, to what classes. At the last term of the United States circuit court, Justice Miller held that the first clause of said section applied to all pending, as well as to all future cases. In re King [Case No. 7,781]. Hence, if a compulsory bankrupt is to be discharged of his indebtedness, irrespective of the percentage paid, or of the assent of any of his creditors, whether the petition was filed before or after the said act of June 22, it is obvious that glaring frauds upon the whole system might be perpetrated, unless some mode of practice is adopted to prevent such mischief. If a debtor, adjudicated a bankrupt—say in 1868, on the petition of a creditor—can now—some six years after the meeting of his creditors, called to show cause why he should not be discharged, at which meeting no one appeared to make opposition, receive his discharge on the simple ground that, no opposition having been made, and said act of June 22 being retroactive, he is entitled to his certificate; then, despite the most glaring frauds, he can have the benefits intended by the act solely for the benefit of honest debtors.

It follows by no means that when a meeting in a compulsory case was called to show cause, prior to June 22, 1874, and no opposition was formally interposed to the discharge, that the bankrupt was entitled to the same. It might be that the creditors knew full well that his estate had not been equal to the percentage then required, and that he had not, and could not, obtain the assent of the then requisite number of his creditors. So knowing, none of his creditors interposed on the ground of fraud; because all creditors knew, that, under the law as it then was, the bankrupt could not be discharged, whether a fraud on the act had been perpetrated or not. If the ninth section of the amendatory act is retroactive in compulsory cases, as Justice Miller holds, shall an adjudicated bankrupt in 1868 receive his certificate of discharge now, because no creditor entered opposition thereto in 1868, at the meeting then held pursuant to the statute as it then existed? As the bankrupt could not, in 1868, procure his discharge without the prescribed percentage or assent, even if no fraud was alleged, the creditors did not undertake the unnecessary labor of appearing and averring fraud.

The embarrassments thus arising this court has often suggested, and, to give full force to the act as amended, has, whenever an application for discharge has been made in a compulsory case adjudicated prior to June 22, 1874, and the meeting had been held prior thereto, caused another meeting of creditors to show cause to be held, and notice thereof to be given. A meeting held previously, where no opposition was interposed, did not show that no fraud had existed, or that the fact thereof would not have been presented if the bankrupt had not been, on other grounds, as shown by the record itself, unable to procure his certificate. The amendatory statute, like all others of a similar character, which in some of its provisions is retroactive, involves necessarily many doubtful and complicated questions. It has been held, and must in this circuit be considered as settled, that although all compulsory cases are, by the express terms of the act, if instituted after December 1, 1873, subject to its provisions, yet they are not so subject as to adjudications had therein prior to the date of the amendatory act. Those decisions extend no further than that previous adjudications are valid. As to the many other and incidental questions arising, there are no authoritative expositions or decisions.

In the matters now before the court, questions are raised as to the retroactive effect of the amendatory act—first, as to transactions after December 1, 1873, and, second, as to cases based on such transactions brought after the passage of said act. Does the amendatory act, in compulsory cases, cover all transactions since December 1, 1873? If so, then, unless the preferred creditor had knowledge of the intended fraud, the preference obtained cannot be invalidated. If said amendatory act does not

cover such transactions, but relates only to cases brought after its passage, are all fraudulent preferences before December 1, 1873, and all after that date, and prior to the passage of the act, to be governed by the rule of "reasonable cause to believe," as contradistinguished from actual knowledge?

If the first clause of section 9 of the amendatory act, which relates to compulsory bankruptcy, operates on all such cases, no matter when brought, whether past or future, why should not the second clause, as to voluntary cases, have the same effect? The first clause declares that previous provisions, as to compulsory cases, shall not apply; and the second, after laying down a new rule as to voluntary cases, repeals in express terms the provisions of the act of 1867. Some United States district courts have held that the repealing clause must be construed not to affect the prior statutes on that subject, amendatory of the act of 1867; and consequently the needed percentage of fifty per cent. remains as to prior cases; while other of those courts hold that as the act of 1867 is expressly repealed, the intermediate amendments thereof fall with it, and, therefore, as to all voluntary cases prior to June 22, 1874, the bankrupts are entitled to their discharge irrespective of any percentage of their estates or the assent of any of their creditors. The reasons for dissent to those decisions must readily occur to every one who carefully analyzes the various acts. As the law stood before June 22, 1874, in both compulsory and voluntary cases, the same requisites for a discharge obtained. The amendatory act, section 9, as interpreted by Justice Miller, applies, so far as compulsory cases are concerned, to all past as well as all future cases; and why not the provisions as to voluntary cases included in the same section, especially as with regard to the latter, in order to make the intention of congress more emphatic, an express clause of repeal was added? If all compulsory cases undetermined are included within the terms of that section, so are all voluntary cases. The manifest purpose was to subject all such cases, compulsory and voluntary, to the new statutory rule. If the rule as to one class of cases retroacted, so does it as to the other, a fortiori. Hence, in voluntary cases undetermined, as well as in compulsory cases, section 9 of the amendatory act must control. The established doctrine here must be, that said section 9 controls in all pending cases—whether voluntary or involuntary—and no matter when instituted.

Section 10 of the act of 1874 provides, expressly, when its provisions shall take effect, viz.: in two and three months, respectively, thereafter. In reducing the time within which conveyances, preferences, etc., were to be invalidated, and in giving the amendatory section no force until after the respective two and three months had expired, it is obvious that congress designed not to interfere with past transactions or with cases under section 35, which were then pending, so far as time was an element. Thus, where four months was the prescribed time under the unamended section 35, the amendment provides that thereafter two months should be the rule, but that the amendment should not take effect for two months; thus leaving as they were all pending cases, and also all acts done under the four months' provision. So in a similar manner as to the six months' clause. Section 11 of the act of 1874 is also amendatory of section 35 of the act of 1867, and is designed to change the rule as to "reasonable cause to believe," but it does not state to what cases the new rule shall apply. Governed by ordinary rules of interpretation, no cases previously brought, and no act previously done, would be affected, unless the court construes the provisions of section 35, in the act of 1867, and of section 11, in the act of 1874, as falling within the principles applicable to remedies alone. This court cannot hold that those provisions are merely of the latter character.

The remedy was changed by section 10, whereby the time was altered, and the legal character or quality of the act was changed by section 11. But section 11, not stating on what, or when, it should go into operation, would unquestionably be entirely prospective, unless the other provisions of the amendatory act, taken in pari materia, compel a different construction. By that section guilty knowledge is an essential element. Section 9 acts on past transactions and pending cases; section 10 is, by its express terms, not to take effect until the times therein named; and section 12 is declared to apply to all past and pending cases mentioned in it which arose after December 1, 1873—thus retroacting for many months. Section 12 enacts, among many other changes, that conveyances, preferences, etc., shall be invalid when the person receiving the same had reasonable cause to believe the debtor was insolvent, "and knew that a fraud on this act was intended; and such person, if a creditor, shall not, in cases of actual fraud on his part, be allowed to prove for more than a moiety of his debt; and this limitation on the proof of debts shall apply to cases of voluntary as well as involuntary bankruptcy." Here are marked changes, not in the former section 39 alone, but necessarily in section 23 also; for guilty knowledge takes the place of "reasonable cause to believe," and a creditor, in cases of actual fraud, impliedly is permitted to prove a moiety of the debt. The law, as it was previously (section 39), provided that when the person, whether a creditor or purchaser, received payment or a conveyance, having reasonable cause to believe, etc., the assignee might recover back, and that the creditor should not be allowed to prove his debt—that is, any part of his debt. Now, although a

creditor, even in the case of actual fraud, is permitted to prove not exceeding a moiety, section 23 did not permit a preferred creditor, even though innocent of actual fraud, to prove his debt before he had surrendered all advantage sought to be gained. Under that provision the courts have generally held that the surrender contemplated must be voluntary; and that when the preferred creditor resisted the demand of the assignee, and made the surrender only when forced to do so by litigation and under judgment obtained against him, he was not entitled to prove his debt, or any portion thereof. The amended section 39, by its terms, changes section 23 in the respects stated above. It, therefore, cannot be considered a correct mode of construction to look only to the language of the special amendatory section; for though it may purport to amend only one of the many former sections of the act of 1867, it may by its provisions work an important change in many other sections.

The amended section 39 says: "And the provisions of this section shall apply to all cases of compulsory or involuntary bankruptcy commenced since the 1st day of December, 1873, as well as to those commenced hereafter." Resting there, no voluntary cases would be included; but as quoted above, the same section provides that the "limitation on proof of debts shall apply to cases of voluntary as well as involuntary bankruptcy." To what cases?—those commenced after December 1, 1873, or to those commenced after the passage of the amendment, or to all cases? In every suit to recover back, the questions on which the right of recovery must rest will necessarily be adjudicated; and if actual fraud is found, then, by the amended section 39, the creditor is limited in his proof of debt to a moiety of his demand. Hence, if that provision as to voluntary cases covers all commenced since December 1, 1873, and guilty knowledge is an essential element, how is it possible to recover under section 35, without proof of such guilty knowledge? True, the limitation is in terms as to proof of debt; but the ascertainment of the fact whereby the limitation operates, must necessarily be involved in the suit to recover back. It may be, that, under section 23, when a voluntary surrender is made, the inquiry as to actual fraud will arise only on the attempt to prove the debt; yet the distinction as to actual and constructive fraud will have to be observed. If guilty knowledge exists, the actual fraud must also exist. The former section 35 presented cases of constructive fraud, independent of any actual knowledge; but if now, in passing upon the creditor's rights—at least in all cases since December 1, 1873—it is necessary to inquire into actual fraud, or guilty knowledge, how can it be fairly urged that

the statute was not intended in that respect to apply to all cases arising under section 35, as well as under section 39?

This extended review of the amendatory act has been made in order to reach a right conclusion as to section 11 of the act of 1874. It imports into the former section 35 the element of guilty knowledge; and so does section 12 import the same element into compulsory cases. Section 12 is declared in the particulars above stated to apply also to voluntary cases; and the whole section is made applicable, to say the least, to all cases commenced since December 1, 1873. Hence, any construction put upon section 11 which leaves section 35 unamended as to cases since December 1, 1873, would render the amendatory act inconsistent with itself.

It is not necessary, for the purposes of this demurrer, to decide whether cases brought or acts done prior to said December, are to be controlled by the amendment; to avoid all doubt as to the views of the court, it is now held that said section 11 of the act of 1874 controls all cases brought since December 1, 1873. There are many difficulties in reaching a satisfactory interpretation of the different amendatory sections; but when they are fully considered and analyzed, it seems clear that congress intended to modify and mitigate the rigid rules previously adopted. Where it has done so, unless some provision to the contrary appears in the specified section, the amendments should be considered as applicable to all pending cases; otherwise the rulings in the circuit court at the last term, on section 9, could not stand. Certainly the same reasoning which produced those rulings would exact the construction now given.

At the first reading of the opinions given in the Wisconsin and Oregon districts, their conclusions seemed satisfactory, except as to the force of the amendment concerning guilty knowledge; and hence, this court has heretofore intimated its assent thereto, except as to knowledge. The question has now, for the first time, been presented for formal determination here; and, in passing on it, the well-known learning and research of the judges who decided those cases demanded a careful and painstaking review of the whole subject, in the light of the rulings made in this circuit. Those rulings here have necessarily, whether in accord with the views of this court or not, had a controlling influence on the decision of the case submitted.

The demurrer is sustained, with leave to amend.

[On appeal to the circuit court, the decree of this court was affirmed. Case No. 12,898.]