EDWIN RICE & another *vs.* GRAFTON MILLS.

Worcester ·    Sept. 30, 1874. — March 1, 1875.   COLT & MORTON, JJ., absent.

At the trial of an action brought by the assignees of a bankrupt for the conversion of goods sold by the bankrupt to workmen of the defendant in pursuance of an order to that effect given by the defendant, which sales were alleged to be a fraudulent preference, the defendant, on the issue whether the bankrupt intended to give a preference, requested the judge to instruct the jury that if the bankrupt at the time of the sales expected that the defendant would pay him the amount at the next pay day, the plaintiff cannot recover, although afterwards the defendant re-fused to pay and credited the amount on account.  The judge declined to give this instruction; and instructed the jury that if the goods were delivered under a con-tract by which the defendant had the option to apply them to a preëxisting debt of the bankrupt and he knew it and was insolvent and had reason to believe he was insolvent, and the defendant did apply the goods to a preëxisting debt, that would be evidence on which to find that the bankrupt intended a preference, although he expected and supposed when the goods were delivered that the defendant would pay him for the goods.  *Held,* that the defendant had good ground of exception.

TORT by the assignees in bankruptcy of Asa J. Smith, for the conversion of certain goods alleged to have been delivered by the bankrupt to workmen of the defendant on the credit of the de-fendant, as a fraudulent preference under the provisions of the United States bankrupt act, U. S. St. of 1867, *c.* 176.   Trial in the Superior Court, before *Allen*, J., who allowed a bill of ex-ceptions in substance as follows :

The evidence tended to show that Smith went into business as keeper of a grocery and variety store on April 1, 1869. The following order signed by the treasurer of the defendant corporation was then delivered to him by the defendant: "New England Village, Mass., April 1, 1869. To avoid the inconvenience of frequent orders and payments of money to our help, at our counting room, will you please deliver to persons employed by the Grafton Mills, such goods and articles as they may desire, or orders for the same, including money to an amount not exceeding the balance of their accounts found by deducting from their wages and credits any charges which we may have against them. And you will please render an account at the close of each month, and whenever any person shall cease to be employed by us, of the amount of goods and articles delivered to them on our account in accordance with this order, — they, however, having first subscribed their names in this book, as evidence of their understanding that for the goods, &c., thus delivered to them, they are indebted to the Grafton Mills and not to you." The order was contained in a book kept at Smith's store until May, 1870, and was up to that time signed by only seven operatives. In May a larger number of names was added by the procurement both of the defendant and Smith. About the time Smith commenced business, the defendant lent him $3500, and charged it on account. All but $1900 of this amount was paid before January 1, 1870, and that amount remained due until after July 1, 1870. The account of the defendant against Smith was thus reduced to $1900 by means of a transfer of accounts not connected with the delivery of goods under the arrangement, and the account was balanced every month, and the balance of $1900 was carried forward from month to month. About January 1, 1870, the balance was taken out of the general account of Smith on the books of the defendant and placed by itself on an account marked No. 2. About July 1, it was replaced in the general account. The book-keeper testified that it was transferred to a separate account for his convenience as book-keeper, and replaced he thought by direction of the treasurer. It appeared that at the same time the $1900 was transferred on Smith's books to a second account and restored to the first account after July 1, 1870. The workmen of the defendant traded at Smith's store, received various

articles which were charged to them from month to month, and at the end of the month Smith handed in to the defendant a list of the names of those who had received goods under this arrangement, and the gross amount was credited to Smith on their books, and the amounts received by the respective workmen were charged to them respectively. Goods had been delivered after the date of the order to the great majority of the workmen who signed the order in May, before they had signed it, and the accounts for such goods were sent in by Smith to the defendant's counting room. On or about the 20th of each month from May, 1869, to and including July, 1870, the defendant paid Smith for the amount of goods delivered the previous month, and charged the amount so paid in account. On August 22, 1870, Smith's store was shut up by attachment. The amounts of goods delivered in July and August were credited by the defendant to Smith. He went into bankruptcy October 25, 1870. Smith testified that when the goods were delivered in July and August to the workmen, he expected the defendant would pay him therefor about the 20th of August and September, 1870, respectively, and did not know they were not going to until his store was shut up. There was other evidence in the case relating to the point controverting the testimony of Smith. The amount of goods delivered in July and August, 1870, was about $1580, and applied to the balance due from Smith to the defendant reduced it to about $437. There was evidence tending to show that Smith was insolvent in July and August, 1870, and that the defendant had reasonable cause to believe that Smith was insolvent when the goods were delivered.

The defendant asked the judge to instruct the jury as follows : " If Smith at the time of the delivery of the articles, or any of them, expected that the defendant would pay him the amount thereof at the next pay day, then, as to such articles, the plaintiff cannot recover, although afterwards the defendant refused to pay, and credited the amount of them on account."

The judge refused to give this instruction, and instructed the jury that if the goods were delivered under a contract by which the defendant had the option to apply them to a preëxisting debt, and if Smith knew it and was insolvent and had reason to believe he was insolvent, and the defendant did apply the goods to a pre-

existing debt, that would be competent and sufficient evidence on which to find that he intended a preference, although Smith expected and supposed when the goods were delivered that the defendant would pay him for the goods, if he delivered them with the knowledge that the defendant had the authority to apply them to the preceding debt.

The judge further instructed the jury that the contract or order under which the goods were delivered did give the defenlant an option to apply the goods to a preëxisting debt.

The jury found for the plaintiffs, and to the foregoing rulings and refusals to rule the defendant alleged exceptions.

*H. B. Staples & F. P. Goulding*, for the defendant.

*W. S. B. Hopkins*, for the plaintiffs.

WELLS, J. The question, presented by this bill of exceptions, is not whether the facts stated and evidence reported were sufficient to authorize the jury to find that Smith intended a preference ; but whether they could so find notwithstanding they should also find that he " expected and supposed, when the goods were delivered, that the defendant would pay him for the goods " at the next pay day.

We must assume that all the other propositions, stated hypothetically in the instruction given to the jury, were found by them to have been established ; to wit, that Smith was insolvent when he delivered the goods, and had reason to believe that he was so ; and also that he knew that the defendant would have the right to apply the account, for goods so delivered, upon his previous debt, if there should be occasion, or if the defendant's officers should see fit so to do. But it is not to be assumed that the jury found that Smith actually knew or supposed himself to be insolvent, or that he was acting " in contemplation of insolvency ; " because no such proposition was embraced in the instruction, or in the statement of facts. Nor is any inference to be drawn from the evidence contrary to the hypothetical statement of the instruction that " Smith expected and supposed " that the goods would be paid for. The correctness of the instruction must be determined by the propositions it contains ; because the jury were authorized to render their verdict upon those alone, and may be supposed to have done so. The force of the exception is not met by arguments upon the evidence in sup-

port of the verdict, or to show that it might properly have been rendered upon grounds not presented in the instruction excepted to. The question is of the correctness not of the verdict, but of the instructions upon which it was rendered.

The written contract or order, under which these goods were delivered, contained no reference to a previous debt of Smith for money borrowed of the defendant. If the goods were delivered upon the expectation and supposition that they would be paid for at the usual pay day of the defendant corporation, there is nothing in the case to warrant the inference that they were delivered in payment of the loan with the expectation of a further loan of the same amount. And if the facts or evidence would warrant an argument to that effect, it would be a perversion of the language of the instruction to ascribe that sense to the words used, that the defendant " would pay him for the goods." We must therefore, in fairness to the judge as well as to the excepting party, construe the reference to the option, under the contract, to apply the amount due for the goods to a preëxisting debt, as meaning only the option which the defendant would have as a creditor to take advantage of the legal right of set-off.

The intent to prefer is essential, and is to be found by the jury. *Denny* v. *Dana*, 2 Cush. 160, 172. *Judd* v. *Gibbs*, 3 Gray, 539, 544. *Toof* v. *Martin*, 13 Wall. 40. A preference was not the direct or necessary consequence of the acts of Smith. A man may, indeed, be presumed to intend the natural and probable consequences of his own acts. But that presumption is only one element of proof to establish the fact of actual intent. The evidence does not show that, prior to the attachment by which Smith's business was interrupted, the probability that the defendant would insist upon a set-off, and thus secure a preference, was so obvious as conclusively to maintain the proposition that he contemplated it and sold and delivered the goods with a view to such a preference ; especially against the fact assumed by the instructions that he " expected and supposed " otherwise.

We are of opinion that in authorizing the jury to find an intent to prefer, upon the facts of this case, contrary to the actual expectation and supposition of the debtor, the instruction of the court was erroneous.                *Exceptions sustained.*