JOHN K. SARTWELL & another, assignees, *vs.* CHARLES H.
NORTH & another.

Suffolk. Nov. 16, 1886. — March 22, 1887. HOLMES & GARDNER, JJ.,
absent.

A., who was insolvent, was sued by B., a creditor, and his property attached on the
writ. A. thereupon paid B. $100 of the debt, and the attachment was released.
Afterwards B. made another attachment of A.'s property on the writ, which was
returned into court, but the service was insufficient. A. endeavored to effect a
compromise with his creditors, and employed as his attorney in the matter C.,
who acted as B.'s attorney in bringing the action against A.; but the com-
promise failed. C. informed A. that the action had been entered in court, that
he could not act for him therein, but would employ some one else to do so if A.
desired, and A. requested him to do so. C. thereupon asked D., another attor-
ney, to enter an appearance for A. in the action. D., acting without pay, and
supposing that it was a matter of accommodation to C., entered an appearance
and filed an answer for A. in the action; and the case was placed on the trial
list by C. D., having received no further instructions, did nothing more, A. was
defaulted, and judgment was entered for B. Execution issued on the judgment,
and was levied upon property of A., which was sold, and the proceeds were
applied to the execution. On the same day, insolvency proceedings were begun
by A., and an assignee appointed. One of the purposes of C., in causing an
appearance to be entered in the action, was to save the necessity of taking out
an order of notice and making further service upon A. At the time the $100
was paid to B., he had no reason to believe that A. was insolvent, otherwise
than by his inability to pay the debt due B. in the regular course of business;
but B. and his attorney had full knowledge of the insolvency before the writ
was entered in court. A. did not, at any time, personally intend to do or cause
to be done anything which should give a fraudulent preference to B. *Held,*
that there was a "preference," within the meaning of the Pub. Sts. *c.* 157, § 96,
on the part of A., in respect to the property seized on execution, but not in
respect to the payment of the $100 to B.

CONTRACT, by the assignees in insolvency of the firm of Fitz
and Martin, against Charles H. North and S. H. Skilton, co-
partners under the firm name of Charles H. North and Com-
pany, to recover $610, alleged to have been obtained of Fitz and
Martin by the defendants as a fraudulent preference.

Trial in the Superior Court, without a jury, before *Knowlton,*
J., who reported the case for the determination of this court, in
substance as follows:

It appeared that, on October 14, 1884, the defendants caused
a writ to be made in their favor against said Fitz and Martin,
returnable to the Municipal Court of the city of Boston on the

25th of said month, to recover a debt of more than $600, which debt had been due and unpaid for several months. Fitz and Martin resided in Lynn, in the county of Essex, and had their usual place of business in Boston, in the county of Suffolk; but the residences of Fitz and Martin were not stated in said writ. An attachment was made upon the writ, and a keeper placed in their store in Boston. Fitz and Martin thereupon paid $100 of the debt, and obtained time to pay or arrange the balance, and said attachment was released.

Afterwards, on October 18, said writ was served by another attachment of a stock of goods in Lynn; and Fitz and Martin were there served with process on the same day for their appearance at court. The writ was returned into court on October 25, and a memorandum was made by the clerk that the service was insufficient, inasmuch as the defendants therein did not reside in the county of Suffolk, and the writ had been served only seven days before the return day.

Fitz and Martin were insolvent, and they proposed to their creditors to compromise their debts by the payment of twenty-five per cent in discharge thereof. The defendants agreed to accept said compromise; and, with their consent, Fitz and Martin employed to represent them, in the business of arranging this compromise with their other creditors, the same attorney who brought the action on October 14.

At the time said attorney agreed to act for Fitz and Martin, they knew that he was acting for his original clients, the defendants in this action, in the collection of their claim, and said attorney did not intend to do anything which should prejudice the interests of said clients, and did not then contemplate the probability of further adverse action on their part, as they had already accepted Fitz and Martin's proposition of compromise, which was made contingent upon said firm's procuring all their other creditors to join therein.

Fitz and Martin were not able to obtain the signatures of all their creditors to the agreement of compromise, and the composition failed. Meanwhile said attorney informed Fitz and Martin that said suit had been entered in court, that he could not act for them in that suit, but would employ some one to do so if they desired, and was requested to do so. He thereupon

requested another attorney, who was his friend, to enter an appearance for Fitz and Martin in said suit. Thereupon said last-named attorney, without being paid, and supposing that it was a matter of accommodation to his friend, entered an appearance and filed an answer for Fitz and Martin in said suit on October 30. On the first day of the following November, the case was placed on the trial list by the attorney who commenced it.

The attorney who appeared for Fitz and Martin, having received notice thereof from the clerk of the court, left word with the son and clerk of the first-named attorney to notify him if he was expected to do anything more in the case. No further notice was given him; a default followed; judgment was entered for the plaintiffs on November 7, and an execution was issued in their favor on the eighth day of the same month. On November 10, the execution was levied upon one hundred and twenty barrels of flour belonging to Fitz and Martin; the flour was sold for $510, and the proceeds were applied to said execution. The levy was made in the forenoon, under the direction of the attorney who brought the suit, and who conducted all the proceedings in it; and in the afternoon of the same day, proceedings in insolvency were commenced for Fitz and Martin, through the same attorney, by filing a petition and the accompanying schedules prepared by him; and it appeared that he had in his pocket the blanks therefor at the time he ordered the levy to be made. Under these proceedings, the plaintiffs were duly appointed assignees. Said attorney was not paid for the insolvency proceedings until after the levy was made.

It was found as a fact, by way of inference from the other facts in the case, stated herein, that said attorney was acting generally for Fitz and Martin, in the business of arranging and adjusting their affairs with their creditors; that one of the purposes of the attorney in causing an appearance to be entered in said suit was to facilitate such proceedings as might be necessary in the further prosecution thereof, and to save the necessity of taking out an order of notice and making further service upon the defendants therein; and that his subsequent action in that suit was with a view of collecting in full the debt of his clients, the defendants in this action, and thereby obtaining an advantage over the other creditors of Fitz and Martin.

It did not appear that, at the time of the payment of the $100, the defendants had any reason to believe that Fitz and Martin were insolvent, otherwise than by their inability to pay the debt due the defendants, in the regular course of business, when it became due, and the facts hereinbefore stated; nor that the payment was made as a fraudulent preference. But they and their attorney had full knowledge of the insolvency before their writ was entered in the Municipal Court. It was also found as a fact, that Fitz and Martin did not either of them, at any time, personally intend to do or cause to be done anything which should give the defendants a fraudulent preference, and had no knowledge of the entry of an appearance for them in said suit, or of any of the proceedings therein after the entry thereof, except as hereinbefore stated, until after the levy of the execution had been made, and the petition in insolvency filed.

Upon these facts, the plaintiffs asked the judge to rule that the payment of the $100 was a fraudulent preference of the defendants; that the proceeds of the sale of the flour levied upon were obtained by the defendants through a fraudulent preference; and that the plaintiffs could recover therefor in this action. The judge declined so to rule; and found for the defendants.

If there was error in the refusal to rule as requested, a new trial was to be granted; otherwise, judgment to be entered upon the finding.

*J. Lowell*, for the plaintiffs.

*W. H. H. Emmons*, for the defendants.

C. ALLEN, J. The questions of law which the report in the present case seems intended to present relate only to the alleged preference which was obtained by the levy of the execution, and are as follows:

1. Whether, according to the true meaning of the Pub. Sts. c. 157, § 96, making fraudulent preferences by an insolvent debtor void, the act relied on should be considered to have been done with the view, on the part of Fitz and Martin, the insolvent debtors, to give a preference to their creditors North and Company; that is to say, whether, upon the facts stated, such a view or intention should be imputed to them, from the intention

entertained by the attorneys, although Fitz and Martin themselves did not either of them, at any time, personally intend to do or cause to be done anything which should give a fraudulent preference to North and Company.

2. Whether the act which was done amounts in law to procuring their property to be seized on execution, within the meaning of the statute.

It has heretofore been clearly established, that, although an intent to give a preference may be inferred from the fact of doing so, with its attendant circumstances, yet there must be proof of an actual intent to prefer. The inference which a jury may properly draw, that a person intends the natural and probable consequences of his act, is only one element of proof to establish the fact of an actual intent. This intent is essential, and must be found as a fact. *Rice* v. *Grafton Mills*, 117 Mass. 228. *Parsons* v. *Topliff*, 119 Mass. 245. *Forbes* v. *Howe*, 102 Mass. 427, 437. *Beals* v. *Clark*, 13 Gray, 18. *Denny* v. *Dana*, 2 Cush. 160, 172. So far as the payment of $100 is concerned, which was made by Fitz and Martin personally, an intent to prefer on their part is expressly negatived, and it necessarily follows that the plaintiffs cannot recover this item from the defendants. But, as already intimated, the more important and difficult questions arise in respect to the other item of claim.

On a fair construction of the report, it seems reasonable to assume that an intention to prefer, on the part of both of the attorneys, was sufficiently proved. It is expressly found that one of the purposes of the first attorney, who communicated directly with Fitz and Martin, was to facilitate such proceedings as might be necessary in the further prosecution of the suit, and his conduct leaves no room to doubt that he intended to secure a preference to North and Company. The second attorney, though employed on behalf of Fitz and Martin, acted without pay, supposing it was a matter of accommodation to his friend, the first attorney; he sought no instructions directly from Fitz and Martin; he assumed to act for them under this employment; he entered an appearance and filed an answer; and thereafter he took no steps to prevent the entry of a default and of judgment. While the report does not state in express terms that these attorneys intended by their course of proceeding

to secure a preference to North and Company, and while it is within possibility that the decision of the court may have been placed on the ground that the proof of such fraudulent intention on their part was not satisfactory, yet it seems much more reasonable to suppose that such was not the view taken at the trial.

The inquiry therefore is, whether in law, under the circumstances stated, the intent to prefer which was entertained by the attorneys is to be imputed to Fitz and Martin. The latter were insolvent. They had been sued by North and Company, and their property attached. They had made a proposal to their creditors to compromise their debts by the payment of twenty-five per cent in discharge thereof. They had employed to represent them, in the business of arranging this compromise, the same attorney who brought the action of North and Company against them. That attorney had informed them that the action had been entered in court, that he could not act for them in it, but would employ some one else to do so if they desired, and he was requested to do so. They thus trusted wholly to his selection of an attorney to represent them, and apparently were content to do so. No further instructions were given, and no limitation was put upon the authority of the attorney to be employed. Moreover, so far as appears, they did not seek to have any personal communication with him ; it is not stated that they even took the trouble to ascertain, or that they were ever informed, who he was ; and they have never repudiated or taken any steps to avoid the effect of what he assumed to do in their behalf. Under these circumstances, it cannot be said that they were deceived or betrayed by the attorney thus employed. While it is possible that he acted in contravention of what they wished and expected him to do, he certainly did not act in violation of any directions which they gave, or which he received from the first attorney. There is nothing in the report to lead to the inference that they meant that he should have less authority than an attorney usually has, when entrusted with the management of litigation in court. It has been held that an attorney has authority, by virtue of his employment as such, to do in behalf of his client all acts, in or out of court, necessary or incidental to the prosecution and management of the suit,

and which affect the remedy only, and not the cause of action. *Moulton* v. *Bowker*, 115 Mass. 36. See also *Shattuck* v. *Bill*, 142 Mass. 56. To enter an appearance for a defendant in court, in case of insufficient service, without requiring the further notice provided for in the Pub. Sts. *c.* 161, § 84, is within this authority. What the attorney did, therefore, was within the scope of his employment, and any act so done by him with a view to give a preference was done by him as the representative of Fitz and Martin, although they were ignorant of it and did not intend that it should be done; and his intention was, by construction of law, their intention. To hold otherwise would be to open a wide door for avoiding the beneficial purpose of the statute.

The principle involved is substantially within the decision in *Rogers* v. *Palmer*, 102 U. S. 263, where it was held that knowledge of a creditor's attorney in receiving a preference is imputable to the creditor; and in *Bush* v. *Moore*, 133 Mass. 198. See also *Graham* v. *Stark*, 3 Ben. 520. It is not necessary at present to go so far as to say that the same result would follow if it appeared that the attorney intentionally and fraudulently acted in violation of his instructions, or in contravention of what he knew or believed that his principals expected him to do. Whether such a fraud committed by him upon those for whom he was assuming to act would vary the rule, may be left to be determined when the question is directly presented.

The act relied on to support the charge that Fitz and Martin procured their property to be seized on execution was the voluntary appearance of the attorney for them in the action, thus curing the insufficient service of the writ. It is now to be assumed that the service was in fact insufficient, since the trial proceeded on that ground. The writ is not before us; but the report shows that one of the purposes of the first attorney in causing an appearance to be entered was to save the necessity of taking out an order of notice, and making further service upon Fitz and Martin, the defendants therein. The defendants now contend that the service was good; but we cannot assume this to have been so. Under these circumstances, the entry of an appearance for Fitz and Martin was a positive act, which directly aided the creditors in obtaining an early judgment, upon which

the creditors took out execution and seized the property. Mere passive non-resistance, on the part of a debtor, to legal proceedings brought without his request or connivance to enforce a claim which is due, and against which he has no just defence, will not bring him within the statute. But any positive act which is done by the debtor with the intention, and which has the effect, to aid the creditor in obtaining a preference by means of levying an execution upon his property, satisfies the requirement of the statute. The debtor procures his property to be seized on execution, if he contributes to such seizure. *Sage* v. *Wyncoop*, 104 U. S. 319, 321. *Rogers* v. *Palmer, ubi supra.* *National Bank* v. *Warren*, 96 U. S. 539. *Little* v. *Alexander*, 21 Wall. 500. *Wilson* v. *City Bank*, 17 Wall. 473, 484. *Lane* v. *Haynes*, 8 Law Reporter, 499, 503.

Construing the report as intended to present the questions above considered, we have come to the conclusion that, upon the facts stated and reasonably to be assumed, a preference within the meaning of the statute was shown in respect to the property seized on execution. *New trial granted.*