JOHN K. SARTWELL & another *vs.* CHARLES H. NORTH & another.

Suffolk.    November 25, 1889. — February 26, 1890.

Present: DEVENS, W. ALLEN, C. ALLEN, HOLMES, & KNOWLTON, JJ.

*Insolvent Debtor — Fraudulent Preference.*

A creditor brought an action against a debtor who was insolvent, and attached his property on a writ which was insufficiently served. The creditor's attorney, after acting for the debtor in attempting to arrange a compromise with his creditors, told the debtor that he could not act for him in the action, but at the debtor's request asked another attorney to enter an appearance. The latter, who acted without pay as a matter of accommodation, did so, and filed an answer, but, receiving no further instructions, did nothing more. The debtor was defaulted; judgment was entered for the creditor, and execution issued thereon was levied upon the property attached, which was sold, and the proceeds applied to the execution. On the same day insolvency proceedings were begun for the debtor, and an assignee was appointed. The creditor's attorney in causing appearance to be entered intended to save the necessity of further service on the debtor, and, by collecting his client's debt in full, to obtain an advantage over the other creditors. The debtor did not, at any time, personally intend to do or to cause to be done anything which would give a fraudulent preference to the creditor. *Held*, that there was a "preference" within the meaning of the Pub. Sts. c. 157, § 96, on the part of the debtor, and that his assignee was entitled to recover the proceeds of the sale on execution.

CONTRACT, by the assignees in insolvency of the firm of Fitz and Martin, against Charles H. North and S. H. Skilton, copartners under the firm name of Charles H. North and Company, to recover among other things the proceeds of a sale on execution, alleged to have been obtained of Fitz and Martin by the defendants as a fraudulent preference.

After the former decision, reported 144 Mass. 188, the case was tried in the Superior Court, without a jury, before *Hammond*, J., who found for the plaintiffs, and allowed a bill of exceptions, in substance as follows.

It appeared that, on October 14, 1884, the defendants caused a writ, a copy of which was annexed to the bill of exceptions, to be made in their favor against Fitz and Martin. The writ, which described the latter as " having their usual place of business in said Boston," but did not state their residence, was returnable to the Municipal Court of the city of Boston on October 25 following, and the action was to recover an overdue debt. An attachment was made upon the writ, on October 18, of a stock of goods in Lynn, where Fitz and Martin resided, and they were there served with process on the same day for their appearance at court. The writ was returned into court on October 25, and a memorandum was made by the clerk that the service was insufficient, inasmuch as the defendants therein did not reside in the county of Suffolk, and the writ had been served only seven days before the return day.

Fitz and Martin were insolvent, and they proposed to their creditors a compromise, which the defendants agreed to accept, and, with their consent, Fitz and Martin employed the same attorney who brought the action on October 14 to represent them in the business of arranging this compromise with their other creditors. At the time such attorney agreed so to act for Fitz and Martin, they knew that he was acting for the defendants in the collection of their claim, and he did not intend to do anything which should prejudice the defendants' interests, and did not then contemplate the probability of further adverse action on their part, as they had already accepted Fitz and Martin's proposition of compromise, which was made contingent upon the joining therein of all their other creditors. All the creditors of Fitz and Martin did not accept the compromise, and the compo-

sition failed.　Meanwhile the defendants' attorney informed Fitz and Martin that the action of October 14 had been entered in court, and that he could not act for them in that suit, but would employ some one to do so if they desired, and he was requested to do so.　He thereupon requested another attorney, who was his friend, to enter an appearance for Fitz and Martin in the action, and thereupon the last named attorney, without being paid, and supposing that it was a matter of accommodation to his friend, entered an appearance therein, and filed an answer for Fitz and Martin on October 30.　On the first day of the following November, the case was placed on the trial list by the attorney who commenced it.　The attorney who appeared for Fitz and Martin, having received notice thereof from the clerk of the court, left word with the clerk of the first named attorney to notify him if he was expected to do anything more in the case.　No further notice was given him; a default followed; judgment was entered for the plaintiffs on November 7, and an execution was issued in their favor on the 8th of the same month.　On November 10, the execution was levied upon the goods attached, which were sold, and the proceeds were applied to the execution.　The levy was made in the forenoon, under the direction of the attorney who brought the action, and who conducted all the proceedings in it; and in the afternoon of the same day, proceedings in insolvency were commenced for Fitz and Martin, through the same attorney, by filing a petition and the accompanying schedules prepared by him; and it appeared that he had in his pocket the blanks therefor at the time he ordered the levy to be made.　Under these proceedings, the plaintiffs were duly appointed assignees.　Such attorney was not paid for the insolvency proceedings until after the levy was made.

It was found as a fact, by way of inference from the other facts in the case, stated herein, that such attorney was acting generally for Fitz and Martin in the business of arranging and adjusting their affairs with their creditors; that one of the purposes of the attorney in causing an appearance to be entered in said suit was to facilitate such proceedings as might be necessary in the further prosecution thereof, and to save the necessity of taking out an order of notice and making further service upon the defendants therein; and that his subsequent

action in that suit was with a view of collecting in full the debt of his clients, the defendants in this action, and thereby obtaining an advantage over the other creditors of Fitz and Martin.

The defendants and their attorney had full knowledge of the insolvency of Fitz and Martin before their writ was entered in the Municipal Court. It was also found as a fact, that Fitz and Martin did not either of them, at any time, personally intend to do or to cause to be done anything which should give the defendants a fraudulent preference, and had no knowledge of the entry of an appearance for them in said suit, or of any of the proceedings therein after the entry thereof, except as hereinbefore stated, until after the levy of the execution had been made, and the petition in insolvency filed.

The defendants contended, and asked the court to rule, that the Municipal Court of the city of Boston had no jurisdiction of the action, that the Superior Court had no jurisdiction thereof by appeal, and that the action could not be maintained ; but the judge declined so to rule. The defendants also contended that the service of the writ in the action brought by the defendants against Fitz and Martin, on October 14, 1884, was sufficient, and that the " memorandum made by the clerk that the service was insufficient " was erroneous, and asked the judge so to rule; but the judge refused so to rule. The judge ruled, as matter of law, that, upon the facts above stated and those reasonably to be inferred therefrom, a preference, within the meaning of the Pub. Sts. c. 176, was shown in respect to the property seized on execution, and that the plaintiffs were entitled to recover for the proceeds thereof in this action, and found for the plaintiffs ; and the defendants alleged exceptions.

*W. H. H. Emmons*, for the defendants.

*J. Lowell*, for the plaintiffs.

DEVENS, J. The decision in the case at bar must be governed by the opinion heretofore delivered in the same case in 144 Mass. 188. The facts, which are there stated fully, are the same, with a single exception to be hereafter noticed; and upon these and those reasonably to be assumed, it was held, as it has been held by the judge who presided at the last trial, that a preference within the meaning of the insolvency law was shown in refer-

ence to the property seized on execution by the defendants, the value of which is sought to be recovered in this action by the assignees in insolvency of the defendants' debtors, Fitz and Martin. It was there said, that to facilitate the procuring a judgment in favor of the present defendants by Fitz and Martin, the insolvent debtors, against whom they had brought suit, was an act of preference on their part, if done with the intention, and if it had the effect, of aiding these creditors in obtaining a preference over other creditors by levying an execution on their property. It was found, as it must be deemed to have been found by the judge of the Superior Court at the last trial, that one of the purposes of the attorney of the present defendants, — who had acted also as attorney for Fitz and Martin, after the suit against them was brought, in endeavoring unsuccessfully to arrange a compromise with their creditors on the payment of twenty-five per cent, — in obtaining another attorney to enter an appearance for them in the suit, was to facilitate proceedings in its further prosecution by thus avoiding the necessity of taking out an order of notice, and making further service under the Pub. Sts. c. 161, § 84, the original service being deemed insufficient, and that this purpose was fairly attributable to Fitz and Martin through the act of the attorney employed on their behalf, and by construction of law was their purpose.

At the former hearing it was assumed, although the writ was not before the court, that the service of the writ in the action brought by the defendants against Fitz and Martin was insufficient. The defendants now claim to have proved, as an additional fact, that the service was sufficient, and that the assumption thus made was erroneous. They therefore contend that the entry of an appearance for Fitz and Martin to cure any supposed deficiency therein was superfluous, and in no way facilitated the obtaining of judgment and execution by them. Even if we adopt the defendants' view, that the service of the writ was sufficient, it by no means follows that their proceedings were not facilitated by the act of their attorney in causing the appearance of the second attorney to be entered for Fitz and Martin under the authority which he had from them. A memorandum had been entered on the docket of

the court, that the service was insufficient. It may be that it did not there appear, as it now does by the bill of exceptions, that Fitz and Martin had a "usual place of business" in Boston. If they had not, the service was clearly insufficient. But whether it did appear or not, while the court held the service insufficient, the defendants could not obtain their judgment in this suit and execution thereon. The bill of exceptions recites that the object of the attorney was "to save the necessity of taking out an order of notice and making further service upon the defendants therein, and that his subsequent action in that suit was with a view of collecting in full the debt of his clients, the defendants in this action, and thereby obtaining an advantage over the other creditors of Fitz and Martin." The service, whether originally defective or not, was completed to the satisfaction of the court by the entry of the appearance of the other attorney. An obstacle which could not have been surmounted, unless the court had revised its opinion, except after an order of notice and service thereof, was thus removed by the act of the defendants' attorney, who acted also by the authority of Fitz and Martin in causing this to be done. The obtaining of judgment was thus directly facilitated.

The defendants further contend that the Municipal Court of the city of Boston, in which this action was commenced, had no jurisdiction thereof, and thus that the Superior Court had none. They urge that this is a proceeding to set aside and annul a judgment of that court, which, as they contend, has no power to reverse its own judgment when rendered. This contention results from an entire misconception. The plaintiffs treat the judgment itself rendered in favor of the defendants as valid, and also the levy of the execution issued thereon. They claim it to have been obtained as a preference in fraud of the insolvent law, and as assignees thereunder they seek to recover the proceeds of the sale on execution as property belonging to them in representing the general creditors.

*Exceptions overruled.*