SHERMAN L. WHIPPLE, assignee, *vs.* JOSEPH T. BOND.

Suffolk. March 25, 26, 1895. — June 28, 1895.

Present: FIELD, C. J., HOLMES, MORTON, LATHROP, & BARKER, JJ.

*Insolvent Debtor — Fraudulent Preference — Mortgage as Security for Pre-existing Liability — Instructions.*

In an action by an assignee in insolvency to recover certain property, or the value thereof, mortgaged by the plaintiff's insolvent to the defendant, in fraud of the insolvent law, it is enough, under the Pub. Sts. c. 157, § 96, to show that the debtor was insolvent; that the conveyance was made within six months before the filing of the petition, and was with a view to give a preference; and that the person to whom the conveyance was made had reasonable cause to believe the person making the conveyance to be insolvent, and that it was made in fraud of the laws relating to insolvency; and the fact that the defendant assumed a new liability by taking the mortgage cannot avail him, if the mortgage was also given as security for a pre-existing liability.

In an action by an assignee in insolvency to recover certain property, or the value thereof, mortgaged by the plaintiff's insolvent to the defendant, in fraud of the insolvent law, the defendant has no ground of exception to the refusal to instruct the jury that, if they "find that the conveyance was made in good faith by the debtor, with the intent solely to obtain means for the continued prosecution of his business, and with the intention and expectation that he would be able to do so, the same is valid, and will not be invalidated by the fact that the person to whom such conveyance is made is a person having a claim against the debtor, or is under liability for him to the amount of a part of the price, which claim or liability is discharged as a part of the consideration for the conveyance, and the plaintiff cannot recover."

TORT, by the assignee in insolvency of the estate of John E. McDougall, to recover certain property, or the value thereof, alleged to have been mortgaged by the plaintiff's insolvent to the defendant, in fraud of the insolvent law. Trial in the Superior Court, before *Maynard*, J., who allowed a bill of exceptions in substance as follows.

There was evidence tending to show that the mortgage, which covered the entire stock in trade of the insolvent and was stated therein to be for the consideration of $890, was given to the defendant to secure him for a payment made to the firm of Israel W. Munroe and Company, to which the insolvent was indebted to the amount of five hundred dollars; that two hundred dollars was paid by the defendant to a bank to take up a note before matu-

rity upon which the defendant was an indorser, and that the balance of the $890, viz. $190, the defendant contended was paid by check or in cash by him to the insolvent after the date of the mortgage, while the insolvent, who was a witness, testified that this balance had been paid to him by the defendant some time before the date of the mortgage. It appeared that the defendant had entered into a written contract with the firm to which he had made the payment of five hundred dollars, as follows:

" Boston, Mass., November 4, 1892. In consideration of one dollar and other good and valuable considerations, the receipt of which is hereby acknowledged, from Israel W. Munroe & Co., of Boston, I guarantee the payment of stock, sold and delivered to John E. McDougall, to the amount of five hundred (500) dollars, from time to time delivered by the said I. W. Munroe & Co., it being understood that this guarantee is not to be called for while the said McDougall is in business and buying of the said I. W. Munroe & Co. J. T. Bond."

The mortgage was made about six weeks prior to the filing of the petition in insolvency, and at the time of the making thereof and the payment by the defendant to the firm the insolvent was still doing business and buying goods of the firm, and no demand had been made by the firm upon the defendant.

There was evidence tending to show that the defendant, in making the payment, and in advancing the money to the insolvent, did so in the belief that 'he insolvent would be thereby enabled to discharge all the debts which he owed except to the defendant, and would be able to continue his business; but there was evidence tending to show the contrary. There was no evidence of actual intent on the part of the insolvent to take the benefit of the insolvent laws save the fact of his insolvency at the time of the making of the mortgage, and there was evidence that the defendant did not know of that fact. But the evidence of the insolvent McDougall and his wife tended to show that at the date of the mortgage, and for some time prior thereto, McDougall was insolvent, and that the defendant requested on different occasions that the mortgage be given, and gave as a reason therefor that McDougall was likely to go under, and that he, the defendant, would thereby lose his money, and that he ought to be secured in preference to other creditors; but these facts the defendant contradicted in his testimony.

There was also evidence tending to show that, at the time of the making of the mortgage, the defendant Bond agreed with the insolvent, as a part of the consideration for said mortgage, that he would pay to said firm its claim against the insolvent to the amount of five hundred dollars, which he afterwards paid, and that he agreed that he would take up the note at the bank, which he did before maturity. There was other evidence in the case material to the issues involved, but not material to any requests for rulings made by the defendant, which were denied.

The defendant requested the judge to rule:

" 1. The conveyance in question was not made in fraud of the laws relating to insolvency, unless it was made with the intent to contravene the insolvent laws, and such intent cannot be inferred from the fact, if it be found, of the actual insolvency of the debtor at the time the conveyance was made, though he knew that he was then insolvent. To be made in fraud of the laws relating to insolvency, the conveyance must have been made with the intent to take the benefit of the insolvency laws. 2. The plaintiff is not entitled to recover in this action unless the jury find that at the time the conveyance was made McDougall intended to go into insolvency, and that the defendant Bond knew of such intent. 3. If the jury find that the defendant Bond, at the time of the making of the mortgage, assumed a new liability to the plaintiff's insolvent or third persons, or paid money represented as the consideration of the mortgage, the mortgage is valid and the plaintiff cannot recover. 4. If the jury find that McDougall, the mortgagor, was in fact insolvent at the time of the making of the mortgage, such mortgage would nevertheless be a valid mortgage, unless the jury find that it was made with an intent to deplete the mortgagor's estate, or give to one creditor an advantage over others; in other words, to create a preference. It is not sufficient to entitle the plaintiff to recover, that he should prove that the debtor was in fact insolvent, and known to be so by the defendant, but he must prove that the defendant knew or had reason to believe that the debtor intended to take the benefit of the insolvent laws. 5. If the jury find that the conveyance was made in good faith by the debtor, with the intent solely to obtain means for the continued

prosecution of his business, and with the intention and expectation that he would be able to do so, the same is valid, and will not be invalidated by the fact that the person to whom such conveyance is made is a person having a claim against the debtor, or is under liability for him to the amount of a part of the price, which claim or liability is discharged as a part of the consideration for the conveyance, and the plaintiff cannot recover.    6. If the jury find that the defendant, pursuant to an agreement with McDougall, paid to Munroe & Co. the indebtedness of McDougall to the amount of five hundred dollars, and received the mortgage as security for such payment, or gave to Munroe & Co. security therefor, and to McDougall cash representing the remainder of the mortgage debt, then the mortgage is valid and the defendant is entitled to a verdict."

The judge declined to give the instructions in the form requested, and instructed the jury upon the other issues involved in the case, in terms not objected to, and upon the matters embraced in the plaintiff's requests for instructions, as follows:

" A person gives a creditor a preference when he turns out something to him which he does not to other creditors; that is, when he singles out and does something in the way of securing him which he does not to his other creditors.    Of course a person may give a preference to one of his creditors, and if he is perfectly solvent no one has any right to complain; it is only when he gives a preference and is insolvent that any one has a right to complain.    The question is, Did he give a preference? That depends upon the circumstances.    If this man was insolvent, and if the defendant was a creditor or was under any obligation for him, bound for him in any way, indorser upon his note or guarantor on some claim, and if he turned out property to secure him on account of that liability or debt, that would be making a preference. . . . If he made a preference, if he was insolvent, was it with a view to give a preference to a creditor? It is a principle of law that a man is presumed to intend whatever is the natural consequence of his act, whatever that act may be. A man is presumed to intend the natural and ordinary consequences which are the result of an act.    If he intended to do an act, that is, to convey his property, and the natural and ordinary result of that was to make a preference, you have a right to say

that he intended to make a preference, — that it was with a view to make a preference. You have a right to say that the person receiving such payment, assignment, etc., if he had reasonable cause to believe such person insolvent or in contemplation of insolvency, received the same in violation of the insolvency laws. If you shall find that McDougall was insolvent or in contemplation of insolvency, and the property was conveyed to the defendant with a view to give him a preference on account of any liability, or any money that he had loaned, or to save him, or to protect him from any liability he was under, then the question is, Had the defendant reasonable cause to know that McDougall was *insolvent or in contemplation of insolvency?* It does not make any difference whether he knew it. Of course if he knew it, he had reasonable cause to believe it; but if he did n't know it, had he reasonable cause to know it from what he knew about the party, or from what he ought to have known from the circumstances, — from what was said, or from what he could see was the condition of the party? If you say the defendant had reasonable cause to know this man was insolvent or in contemplation of insolvency, or that he had reasonable cause to know that the mortgage was given to him so that the property could not be distributed among all the creditors, so that it was a fraud on the insolvent law, — because the insolvent law means that all property shall be distributed alike, unless some man has a legal preference, — and that this was done by the parties for the purpose of preventing the property from being evenly distributed, then this conveyance is void, and the assignee is entitled to recover.

"There was some evidence that five hundred dollars was taken and was paid to wipe out the debt. If that was the case, if five hundred dollars of this money was paid on this mortgage, was used and understood to be used for the purpose of wiping out this debt which the defendant had guaranteed, that would be a preference, just as much as if it paid the debt. It does n't make any difference whether it was paid to secure him for a debt owed by him, if it was done in that way, directly or indirectly, for the purpose of relieving him from that guaranty which he had signed to Munroe & Co., or if it was done partly for the purpose of raising money to pay off the note which he had indorsed for him, — the note which was given to him, and

which he had indorsed and put into the bank, — it would be just the same as if it was to pay off a debt actually due.

" There was some evidence, and perhaps conclusive, — I don't know about that, — that one hundred and ninety dollars or some sum was paid to the insolvent in checks afterwards, as part of this eight hundred and ninety dollars. If you shall find that any part of this money was used in the way I have said, to pay off the debt or relieve him from obligation, the fact that some of the money was given for a proper consideration would not save the whole transaction from being void, because if a part of this transaction was in order to give preference, the whole thing falls, although part of the money may have been actually paid at the time."

The jury returned a verdict for the plaintiff for $871.07; and the defendant alleged exceptions.

*W. Howland,* ( *C. H. Innes* with him,) for the defendant.

*S. L. Whipple,* ( *W. R. Sears* with him,) for the plaintiff.

LATHROP, J. The first, second, and fourth requests for instructions were properly refused. The plaintiff relies upon the case of *Gorham* v. *Stearns,* 1 Met. 366. That case was decided under the St. of 1838, c. 163, § 10, where these words occur: " in contemplation of his becoming insolvent, and of obtaining a discharge under the provisions of this act." It was held that it must be shown that the debtor contemplated going into insolvency and obtaining a discharge. This was changed by the St. of 1841, c. 124, § 3, so as to read, " being insolvent, or in contemplation of insolvency." See *Ex parte Jordan,* 9 Met. 292. As the law stands to-day, Pub. Sts. c. 157, § 96, it is enough to show that the debtor was insolvent; that the conveyance was made within six months before the filing of the petition, and was with a view to give a preference, and that the person to whom the conveyance was made had reasonable cause to believe the person making the conveyance to be insolvent; and that it was made in fraud of the laws relating to insolvency. As is said by Chief Justice Shaw in *Denny* v. *Dana,* 2 Cush. 160, 171 : " Contemplation of insolvency is one of the cases in which a preference shall be avoided, but it is not the only one; the other is the being in fact insolvent, under the circumstances, and with the incidents mentioned. Actual insolvency of the debtor, and reason-

able belief, on the part of the creditor, that he is so, without contemplation of insolvency, constitute a fraudulent preference."

And it is generally the rule, that, if the jury find that the person making the conveyance was insolvent at the time that it was made, and that it was made with a view to give a preference over other creditors, and that the person to whom the conveyance was made had reasonable cause to believe that his grantor was then insolvent, they will be authorized in finding that the conveyance was in fraud of the insolvent law.    *Abbott* v. *Shepard*, 142 Mass. 17.

The third and sixth requests were properly refused.    The fact that the defendant assumed a new liability by taking the mortgage cannot avail him, if the mortgage was also given as security for a pre-existing liability.    *Denny* v. *Dana*, 2 Cush. 160, 172. *Forbes* v. *Howe*, 102 Mass. 427, 436.    *Peabody* v. *Knapp*, 153 Mass. 242.

The fifth request for instructions was properly refused.    It is taken from *Smith* v. *Merrill*, 9 Gray, 144, though it omits all reference to the question whether the conveyance was made with a view to a preference or not, which appears in the instruction in *Smith* v. *Merrill*.    In view of the evidence, we are of opinion that the judge gave all the instructions necessary upon this point.                    *Exceptions overruled.*