JOHN J. MUNDO *vs.* JOHN SHEPARD & others.

Suffolk.    December 10, 1895. — June 10, 1896.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP,
& BARKER, JJ.

*Insolvency — Assignment to secure Indebtedness — Preference.*

At the hearing on a bill in equity brought by the assignee of an insolvent trader
    to set aside an assignment of certain credits made by the debtor as security for
    an indebtedness to the defendant, and in order to obtain further credit from
    him, the judge found that the debtor was insolvent at the time of the assign-
    ment, that the assignment, which was made within six months before the filing
    of the petition in insolvency, was not made in the ordinary course of business,
    and that the defendants had reasonable cause to believe the trader to be insol-
    vent only in the sense of not being able to pay his debts as they accrued in the
    ordinary course of business ; but, although the evidence warranted it, he did not
    find that the debtor knew or had reasonable cause to believe that he was insol-
    vent, and there was evidence that the debtor and the defendant believed that the
    debtor's assets were sufficient to pay his debts, and that the lack of ready money
    arose from an unwillingness to imperil his custom by pressing for prompt pay-
    ment of his bills. *Held,* that it could not be said, as matter of law, that the
    insolvent acted with a view to give a preference. FIELD, C. J., KNOWLTON,
    & LATHROP, JJ., dissenting.

BILL IN EQUITY, filed July 2, 1894, by the assignee in insol-
vency of Adelaide C. Clark, to set aside an assignment of certain
accounts made by the insolvent as security for a debt due to the
defendants.

The case was heard in the Superior Court, before *Dewey*, J.,
who dismissed the bill, and, at the request of the plaintiff, re-
ported the case for the determination of this court, in substance
as follows.

The insolvent, Adelaide C. Clark, was, in 1893, a dressmaker
and milliner doing business in Boston, and being at that time
indebted for goods sold to her by the defendants, Shepard, Nor-
well, and Company, in the sum of about $1,700, she, on May 6,
1893, assigned to them as security for her indebtedness certain
accounts due and owing to her, amounting in all to about $2,100,
it being understood that the surplus of such accounts when col-
lected was to be returned to Mrs. Clark if additional credit to that
amount had not been furnished to her.    Thereafter, on October

12, 1893, Mrs. Clark filed a voluntary petition in insolvency, and the plaintiff was appointed assignee.

Mrs. Clark testified that she carried on a large business as dressmaker and milliner in Boston; that at the time of the assignment to the defendants her assets were from $9,000 to $11,000, and her liabilities were about $16,500; that of the latter amount $6,500 were debts due mostly for merchandise; that her creditors included many of the large dry goods houses in Boston; that she kept no regular books of account, and she estimated her assets and liabilities from investigations made at the time of the hearing; that most of these liabilities were overdue, and she was unable to pay them; that for several years prior to her assignment she had had an open account with the defendants, which, until the winter of 1893, had not exceeded $500, but at that time, her business increasing, she increased her account to such an extent that the defendants notified her that unless it was reduced they should refuse her further credit; that prior to said assignment one Collirton, representing the defendants, called frequently at her store to sell goods and collect money, and she told him that she could not make any large payment upon her account; that she did not have the money to pay it in full because collections were slow, but she occasionally made small payments; that one Webster, who had charge of the credits and financial matters of the defendants' business, told her that her account must be reduced or further credit would be refused, and inquired as to the prospects of her making collections, to which she replied that the bills were all good, and she expected to collect them, when she would apply them on her account, but that she did not wish her credit stopped as her business was good; that thereupon Webster suggested, as a condition for the continuation of her credit, the assignment of certain accounts which were good; and that after the assignment credit was from time to time given her, but was finally refused, and at the time of filing the petition in insolvency her indebtedness to the defendants had increased.   Mrs. Clark further testified that she did not know whether or not she told Webster or Collirton that she had other creditors besides the defendants, or that other creditors were pushing her, though in fact one creditor had brought suit against her; that she did not inform them of a mortgage upon her stock

in trade; that she did not at the time of the assignment to the defendants intend or expect to go into insolvency; that her business was good; that she did not wish the defendants to refuse her credit, as she hoped that with it she could go on; that she did not believe herself to be insolvent or fully realize her condition; and that she did not figure her liabilities closely, but had a general idea of what she owed, and that she should be able to pay all her creditors in full.

On cross-examination, in answer to the question whether she meant to prefer the defendants, she testified that she did not look at it in that way, but was anxious to get more credit, and that she had never previously assigned her accounts.

There was evidence for the defendants that in 1891 Mrs. Clark's credit was good, but in the spring of 1893 she became slow in her payments, and in conversations with the defendants or their representatives both she and her husband said that she was doing a good business, had some of the best trade in the city, and was amply able to pay all her bills, but that collections were slow, and she did not have much ready money; and that accounts due her were good, and that it would be all right. They did not tell the defendants that Mrs. Clark had other accounts, or mention the mortgage on her stock in trade. The defendants at one time refused her further credit, and subsequently ordered it to be continued, and sales were from time to time made to her until her insolvency. This was all the material evidence.

The judge found that Mrs. Clark made the assignment within six months prior to filing her petition in insolvency; that at the time of the assignment to the defendants she was not able to pay her debts as they accrued in the ordinary course of business, and was insolvent, and that her total liabilities greatly exceeded her total assets; that the defendants had reasonable cause to believe Mrs. Clark to be insolvent only in the sense of not being able to pay her debts as they accrued in the ordinary course of business; that the assignment was not made in the usual and ordinary course of business, but that Mrs. Clark did not then contemplate going into insolvency, but thought that she would be able to keep on in business and pay all her debts; that the assignment was not made by her in fraud of the laws relating to insolvency, or with a view to prevent the property from coming

to her assignee in insolvency, or to prevent the same from being distributed under the laws relating to insolvency, or to defeat the object of, or in any way impair, hinder, impede, or delay the operation or effect of, or to evade any of the provisions of the insolvency law ; and that the defendants, when the assignment was made, did not have reasonable cause to believe Mrs. Clark was insolvent in the sense of not having sufficient property and assets to pay her debts, or that she was in contemplation of insolvency, and that the assignment was made in fraud of the laws relating to insolvency, or with a view to prevent the property from coming to her assignee in insolvency, or to prevent the same from being distributed under the laws relating to insolvency, or to defeat the object of, or in any way impair, hinder, impede, or delay the operation or effect of the provisions of the insolvency law.

The case was argued at the bar in December, 1895, and afterwards was submitted on the briefs to all the judges.

*C. R. Darling*, for the plaintiff.

*J. J. Higgins*, for the defendants.

HOLMES, J.     This is a bill in equity, brought by the assignee in insolvency of Mrs. Clark to set aside an assignment of certain credits made by the insolvent as security for a debt due to the defendants, and in order to obtain further credit from them.     The case comes here on report.     In form, the only question reserved is the correctness of a ruling that the bill cannot be maintained on the facts found by the judge who tried the case.     But as one of the findings is that the assignment was not made in fraud of the insolvent laws, and as the evidence is reported, we assume with some hesitation, as the counsel have assumed in their arguments, that it was intended to open the correctness of this finding, as matter of law, in view of the facts subject to which it was made.

It is found that Mrs. Clark was insolvent at the time of the assignment, and that the assignment was not made in the ordinary course of business of Mrs. Clark.     There was evidence tending to show that Mrs. Clark had reasonable cause to believe that she was insolvent, and there is no question that the evidence warranted a finding for the plaintiff.     On the other hand, it is not found that Mrs. Clark knew or had reasonable cause to

believe that she was insolvent, and in view of the general find-
ing under discussion we can assume no more than the facts
found or admitted require. It is found that she was not able to
pay her debts as they fell due in the ordinary course of business,
and this almost necessitates the assumption that she knew that
she could not, and therefore knew that technically she was in-
solvent. But Mrs. Clark was a fashionable milliner, and there
was evidence that at the time she believed, and the defendants
believed, that her assets were more than sufficient to pay her
debts, and that the want of ready money arose solely from the
unwillingness to imperil her custom by pressing for prompt pay-
ment of her bills.

We suppose that it is with reference to such a case as that
that all the later decisions have emphasized the necessity of find-
ing an intent to create a preference, or to effect some other fraud
on the insolvent law as a fact, before a conveyance can be set
aside. *Bridges* v. *Miles*, 152 Mass. 249. *Sartwell* v. *North*, 144
Mass. 188, 192. *Rice* v. *Grafton Mills*, 117 Mass. 228, 232. It
would be very hard to declare a conveyance void if at the time
the grantor had property unquestionably sufficient to pay his
debts, but owing to a cause like that mentioned, or to its being
invested in land, he had not ready money enough to pay on de-
mand and therefore appropriated assets to pay or to secure one
which was pressing, knowing that thereby the continuance of his
business would be facilitated, and not doubting that his course
was at least harmless to his other creditors. The evidence war-
ranted a finding that Mrs. Clark supposed that to be her situation,
and that her only motive was to get more credit. If she did
suppose so, and in fact had no other motive, the tendency of her
conduct to create a preference was not manifest to her because
the tendency would not have existed if the facts believed by her
were true, and therefore it would be a mere fiction to say that
she acted " with a view to give a preference." It cannot be said
that as matter of law, every conveyance to secure a past debt
is voidable when the grantor is insolvent and knows that he can-
not pay his debts in the regular course of business as they fall
due, even if his creditor has reason to believe that a fraud on
the insolvent law is intended, and therefore it cannot be said, as
matter of law, that the decree was wrong.

*Decree affirmed.*

KNOWLTON, J. It seems to me so manifest that the decision of the judge of the Superior Court was founded on an error of law, that, notwithstanding a doubt in regard to the meaning of the reservation, I think that the decree should be set aside and the law applicable to cases of this kind more fully stated.

To avoid a conveyance under Pub. Sts. c. 157, § 96, it must be proved that at the time of making it the debtor was insolvent or in contemplation of insolvency, that it was made within six months before the filing of the petition by or against him, that it was made with a view to give a preference, that the person receiving it had reasonable cause to believe that the debtor was insolvent or in contemplation of insolvency, and that the conveyance was made in fraud of the laws relating to insolvency. If the transaction was not in the usual and ordinary course of business of the debtor, a *prima facie* case of reasonable cause to believe on the part of the person receiving the conveyance is made out. Pub. Sts. c. 157, § 98. *Stevens* v. *Pierce,* 147 Mass. 510.

The judge found that the debtor was insolvent at the time of making the conveyance in question, that the conveyance was made within six months prior to the commencement of the proceedings in insolvency, that it was not made in the usual and ordinary course of business of the debtor, that the defendants then had reasonable cause to believe that she was insolvent, but only in the sense of not being able to pay her debts as they accrued in the ordinary course of business, that she did not then contemplate going into insolvency, and that the defendants did not have reasonable cause to believe that the conveyance was made in fraud of the laws relating to insolvency. The defendants were creditors, and the case is governed by the provisions of § 96 above referred to. If the debtor was insolvent, it is not necessary to show that she was in contemplation of insolvency, and no fraud need be proved other than making a conveyance when insolvent with a view to give a preference to a creditor. The judge in his findings seems to make a distinction in legal effect between insolvency in the sense of not being able to pay one's debts as they fall due in the ordinary course of business, and insolvency in the sense of not having sufficient property ultimately to pay one's debts if they are not enforced at maturity and if time is given to enable the owner to dispose of the prop-

erty advantageously. I know of no distinction recognized by our laws between the insolvency of a trader by reason of his being unable to pay his debts in the ordinary course of business as they mature and his inability ultimately to pay them. If a trader is in the condition of not being able to pay his debts in the ordinary course as they mature, he is insolvent, and is subject to all the consequences which the statute attaches to insolvency. The law deals with present conditions in reference to existing debts, and does not attempt the impossibility of correctly foretelling the future beyond the events immediately practicable in the ordinary course of business. The law intends that a trader in that condition shall do nothing to interfere with a *pro rata* distribution of his property among his creditors, if insolvency proceedings ensue within a stated time. Until the amendment by St. 1886, c. 322, if one in that condition, and having reasonable cause to believe himself so, paid or secured any debt in whole or in part within one year next before the filing of the petition by or against him, it was, by the express terms of Pub. Sts. c. 157, § 93, a fraud upon the law which prevented his obtaining a discharge. See *Cozzens* v. *Holt*, 136 Mass. 237. It did not take the case out of this provision of the statute if the debtor at the time believed his property exceeded in value the amount of his debts, and expected ultimately to pay all his creditors without proceedings in insolvency. If he made such a payment, he did it at the risk of its defeating his application for a discharge if insolvency proceedings were commenced within a year. So in regard to the right to recover back property conveyed, which has not been affected by this amendment, if insolvency proceedings ensue within six months the rights of the general creditors are preserved if the debtor was, at the time of the conveyance, insolvent, and if he acted with a view to give a preference to one who had reasonable cause to believe him to be insolvent and to intend a preference. If these conditions existed at the time of the conveyance it is immaterial that neither party contemplated insolvency proceedings, and that each hoped and expected that the debtor would get an extension and finally pay in full. These strict provisions are deemed necessary for the protection of creditors when one is unable to pay in the ordinary course of business.

In *Forbes* v. *Howe*, 102 Mass. 427, 435, is this language : " The case of *Jones* v. *Howland*, 8 Met. 377, relied on by the defendants, turned upon the question whether the sales which it was sought to avoid were made ' in contemplation of bankruptcy,' in the sense of the United States bankrupt act of 1841. The terms of that statute were held to require that the intent which would make void a sale must be an intent to give a preference in contemplation of bankruptcy. But the present bankrupt act avoids a sale made with a view to give a preference, if the debtor at the time be in fact insolvent, although he may not contemplate bankruptcy. Under this statute, we think the phrase ' with a view to give a preference ' must be construed somewhat less strictly, so as to include an intent to give one creditor any advantage over others in respect of payment or security of his debt." This language is equally applicable to our statute, whose words in this part are the same as those of the United States bankruptcy act of 1867. U. S. St. March 2, 1867, § 35. In *In re George*, 1 Lowell, 409, 411, Lowell, J. says : "A debtor gives a preference when, knowing, believing, or suspecting that he cannot pay all his creditors in full, he chooses to pay or secure one, and thus give him an intended advantage over the rest. . . . If you find the knowledge of insolvency, and an expectation or fear of stopping payment, you must infer the intent, because every sane person is presumed to intend the well known consequences of his acts." See also *Toof* v. *Martin*, 13 Wall. 40 ; *Wager* v. *Hall*, 16 Wall. 584. In *Fernald* v. *Gay*, 12 Cush. 596, 597, Chief Justice Shaw uses these words : " The plain object and policy of the insolvent laws is, to require a debtor, as soon as he has reason to believe himself insolvent, and before he has frittered away his property, by schemes which appear plausible, to put himself and his assets at once into the hands of the law, with a view to two objects : one is to make an equal · distribution amongst all his creditors ; the other, to pay every creditor as large a part of his whole debt as the means of the debtor will allow," etc. In *Holbrook* v. *Jackson*, 7 Cush. 136, 150, the same judge says : " We think the position insisted on by the plaintiff, that although actually insolvent, and although they had no reasonable ground to believe themselves solvent, against the fact, yet a sincere belief that they could go on,

however groundless, and an intention to do so, would save the conveyance from being held invalid, cannot be maintained as law, under the existing statute." In this particular there has been no change in the law of this Commonwealth since these decisions were made. See also *Denny* v. *Dana*, 2 Cush. 160, 171; *Barnard* v. *Crosby*, 6 Allen, 327, 332; *Abbott* v. *Shepard*, 142 Mass. 17. *Whipple* v. *Bond*, 164 Mass. 182, the latest case in which the subject of fraudulent preferences has been considered by this court, reaffirms the doctrines laid down by Chief Justice Shaw.

A trader unable to pay his debts in the ordinary course of business may speculate upon the chances of being able to induce his creditors to wait, and of finally getting the means to pay them all in full; but in my opinion he and any creditor dealing with him with knowledge of his condition speculates at the risk of having a payment or conveyance set aside, and an equal distribution made if insolvency proceedings are commenced within six months. It seems to me that the enforcement of this rule is the only practicable way of securing justice to creditors who are outstripped in the race for payment or security. When a trader is unable to pay his debts in the ordinary course of business, there is risk, not only that creditors will not receive the money due them when they are entitled to have it, but that they will finally lose some part of it. To pay or secure a creditor under such circumstances is to give him a preference over others who have no security. In my opinion, all the preference that a trader, knowing himself to be insolvent, need intend in order to bring the case within the statute is security against the risk of delay and loss which necessarily results from his condition, and it is none the less a preference if, when such security is given, the debtor hopes and expects that the other creditors will ultimately be paid in full. It is not necessarily security against an expected loss, but against the risk of loss when the debtor is in fact insolvent, that constitutes the preference.

In the present case the judge finds that the debtor, who bought and sold goods in the prosecution of her business as a dressmaker, was insolvent at the time of making the assignment. He finds that the defendants had reasonable cause to believe that she was insolvent. He finds facts which, under the statute, make a *prima*

*facie* case against the defendants in support of the proposition that they had reasonable cause to believe that the conveyance was fraudulent. It seems to me that there is no evidence to overcome this *prima facie* case, and that the finding that they had no reasonable cause to believe the conveyance to be fraudulent is erroneous in law. I think the evidence shows overwhelmingly that the debtor knew that she could not pay her debts in the ordinary course of business, and that one of her purposes in making the conveyance was to secure the defendants against the risk of loss growing out of her condition. I can see no evidence which tends to show the contrary. If these facts are conceded, I think the right of the other creditors to have this property distributed is not affected by any possible answer to the question whether she hoped or expected to be able to go on with her business and finally to pay her creditors. *Bridges* v. *Miles*, 152 Mass. 249, and other similar cases, merely hold that whether there was an intent to prefer is a question of fact. Treating this as a question of fact, I think the findings and the undisputed evidence in the present case are inconsistent in law with the decision of the judge of the Superior Court.

I am authorized to say that the Chief Justice and Mr. Justice Lathrop concur in this opinion.