PERCY G. BOLSTER, assignee, *vs.* CHESTER H. GRAVES & another.

SAME *vs.* SAME.

Suffolk.　March 23, 1905. — October 19, 1905.

Present: KNOWLTON, C. J., MORTON, LATHROP, HAMMOND, & BRALEY, JJ.

*Insolvency. Evidence. Practice, Civil.*

In actions by an assignee in insolvency, under Pub. Sts. c. 157, § 96, (R. L. c. 163, § 110,) to recover property and money alleged to have been transferred to and received by the defendant as fraudulent preferences, evidence of the state of the money market at the time of the transactions, offered by the defendant upon the issue of insolvency, is irrelevant.

In an action at law the findings of fact by a judge sitting without a jury cannot be revised if there was any evidence to sustain them.

If the circumstances of a transfer of goods and book accounts by a person insolvent at the time are such that it is voidable as a fraudulent preference under Pub. Sts. c. 157, § 96, (R. L. c. 163, § 110,) so far as it was the intention of the parties to secure a pre-existing indebtedness, this makes the whole transaction voidable including a part of the transfer made to secure a present loan.

LATHROP, J. These are two actions, one in tort, in the nature of trover, and the other in contract for money had and

received, by the assignee in insolvency of John S. Gibbon, for alleged preferences received by the defendants from Gibbon within six months before the filing of his petition in insolvency.

The proceedings in the case are under the Pub. Sts. c. 157, § 96, now the R. L. c. 163, § 110. In the Superior Court the case was sent to an auditor, who found in the action of tort that all the goods enumerated in the plaintiff's amended declaration included in the items numbered 221 to 342, both inclusive, were pledged and transferred to the defendants to secure loans and debts past as well as present; that these pledges and transfers were made within six months before Gibbon filed his petition in insolvency; that Gibbon made the pledges and transfers to the defendants with a view to give them a preference, and the defendants received the pledges and transfers having reasonable cause to believe that Gibbon was then insolvent; that the pledges and transfers of the goods enumerated in the items specified were made in fraud of the laws relating to insolvency and were void; and that the defendants converted to their own use the goods enumerated in the items above mentioned, and that the fair market value of the goods at the time of the conversion was $6,776.

In the action of contract the auditor found that on July 1, 1893, and on August 1, 1893, Gibbon executed and delivered assignments to the defendants of all his book accounts then due to him, on those respective dates. The auditor further found that the assignments were within six months before the filing of Gibbon's petition in insolvency; that these assignments were made by Gibbon as collateral, in part for pre-existing indebtedness, at a time when he was insolvent, when he was not paying, and was unable to pay, his debts in the usual course of business; that the defendants had reasonable cause to believe that Gibbon was insolvent; and that the assignments were made, and the defendants had reasonable cause to believe that they were made, with a view of giving them a preference, and in fraud of the laws relating to insolvency.

The auditor further found that after the last assignment was made, Gibbon's business was interrupted by attachments and practically stopped; and that during the period of this cessation, from about August 20 to some time in October, Gibbon received from

his book debtors and turned over to the defendants checks and money to the amount of $1,030.59; and that the defendants owed this sum with interest from the date of the plaintiff's writ.

At the trial before a judge of the Superior Court, the plaintiff put in the auditor's report and rested. The defendants put in testimony, which is reported at length in the bill of exceptions; and the plaintiff put in evidence in rebuttal. The judge refused to give certain instructions requested, and made the following findings: In the action of tort, "the court finds for the plaintiff and assesses damages in the sum of $10,482.47. The auditor's report has not been controlled or overcome by the evidence before me, and I make my findings in accordance with his report." In the action of contract the finding was as follows: "The court finds for the plaintiff and assesses damages in the sum of $1,594.32. I find that the facts in evidence before me do not control the auditor's report, and I find in accordance with his report."

The case is before us on the defendants' exceptions to the exclusion of certain evidence; to the findings, and to the refusal to give the rulings requested.

1. The first exception relates to the exclusion of evidence of one Cram, who was assistant cashier of a national bank in 1893. He was asked whether he knew the state of the money market in Boston and vicinity through June, 1893, and down to August 10. He answered in the affirmative. He was then asked to state what it was; and the question was excluded.

We are of opinion that the question was rightly excluded. In *Vennard* v. *McConnell*, 11 Allen, 555, 561, it is said by Chief Justice Bigelow: "The rule of law by which a condition of solvency or insolvency is to be ascertained and determined could not be affected or modified by any sudden, temporary or general embarrassment of the operations of trade, causing widespread monetary distress and mercantile disaster, whatever may have been the causes which led to such results."

2. Under the Pub. Sts. c. 157, § 96, under which these actions were brought, it is enough to show that the debtor was insolvent; that the conveyance was made within six months before the filing of the petition, and with a view to give a preference; that the person to whom the conveyance was made

had reasonable cause to believe the person making the convey-
ance to be insolvent; and that it was made in fraud of the laws
relating to insolvency. *Whipple* v. *Bond,* 164 Mass. 182. See
also *Denny* v. *Dana,* 2 Cush. 160, 171.

In *Denny* v. *Dana* it was held that " actual insolvency of the
debtor, and reasonable belief, on the part of the creditor, that he
is so, without contemplation of insolvency, constitute a fraudu-
lent preference."

It was competent for the auditor and the judge to find that
the conveyances in question were in fraud of the insolvent law.
*Abbott* v. *Shepard,* 142 Mass. 17.

These cases were tried by a judge without a jury; and we
cannot revise his findings of fact if there was any evidence to
sustain them. *Bridges* v. *Miles,* 152 Mass. 249. *Mundo* v.
*Shepard,* 166 Mass. 323.

3. The remaining exceptions relate to the refusal to give the
rulings requested. The first request in each case was that the
plaintiff was not entitled to recover. In *Quin* v. *Bay State
Distilling Co.* 171 Mass. 283, 290, it was said by Mr. Justice
Knowlton: " The auditor's report in favor of the plaintiff is
enough to warrant the finding of the judge and his refusal to
give the rulings requested, unless the findings in the report or
the other facts stated are necessarily inconsistent with the
refusal and the result." We are of opinion in the cases at bar
that the defendants on the evidence in the cases were not
entitled to have the requests granted. See *Peabody* v. *Knapp,*
153 Mass. 242, 243; *Killam* v. *Peirce,* 153 Mass. 502.

The facts in the case may be summarized as follows. The
first publication of notice of Gibbon's petition in insolvency was
on September 25, 1893. Gibbon had failed previously in 1891,
and the defendants at that time had advanced to him the means
to make a settlement with his creditors. It was then agreed
between them that Gibbon should at all times keep the defend-
ants secured for the sum then advanced by them, and for the
value of all goods they should thereafter sell Gibbon on credit.
The defendants thereafter made further loans to Gibbon and
sold him further goods on credit, and he was indebted to them
on both of these accounts in the sum of $18,622.21, on June 30,
1893, before the transactions of which the plaintiff complains.

Between 1891 and June 30, 1893, Gibbon gave the defendants security for indebtedness, by placing merchandise in warehouses, from time to time, having receipts issued for such merchandise in the defendants' name, and delivering such receipts to the defendants. There was a general understanding between Gibbon and the defendants with respect to the collateral which was thus transferred to the defendants, namely, that any and all collateral received by the defendants from Gibbon at any time became, in the defendants' hands, security for any and all indebtedness of Gibbon to the defendants, whether such indebtedness arose before, or contemporaneously with, or subsequently to, the receipt by the defendants of such collateral. On June 30, 1893, before the transfers of which the plaintiff complains, the defendants held collateral, under the foregoing understanding, of the value of $15,381.

Previously to June 30, 1893, Gibbon had but a limited capital; he had become a party to notes and obligations beyond his ability to pay, several of which had been protested for non-payment; he had frequently renewed his notes to the defendants, and had recently been sued and property in his store had been attached. For two years Gibbon usually had looked to the defendants when he needed a cash loan, and they practically had acted as his bankers. They knew of the attachment; they knew that he was being pressed by one Holden for payment of a large debt, and there was evidence that they knew that he was on paper of Thomas and Son, who had just failed. Under these circumstances, Gibbon informed the defendants that he wished to make an assignment to them, but, upon the defendants' advice, on June 30, 1893, instead of assigning, he borrowed $3,500 more of them, and gave them, as collateral, under their general understanding with respect to collateral, merchandise of the value of $5,646 (being the goods described in items 221 to 253 inclusive, in the bill of particulars in the action of tort), and an assignment of all his book accounts. He also agreed to assign his book accounts to the defendants in each month thereafter.

On August 1, 1893, Gibbon assigned his book accounts to the defendants again. They have received, under both assignments, $1,039.59, to recover which the action in contract was brought. Between June 30 and September 6, 1893, the defendants made

further loans to Gibbon and sold him goods on credit in reliance on the collateral held by them. On September 6 the defendants lent Gibbon $450, with which he paid his note held by one Clark, who also held, as collateral, the goods described in items 341 and 342 in the bill of particulars in the action of tort. Gibbon took out new warehouse receipts for these goods, and gave them to the defendants to hold as collateral, under the general understanding recited above. These goods were of the value of $1,130.

The total amount of loans made and value of goods sold by the defendants to Gibbon, from and including the loan of $3,500 on June 30, 1893, to the date of Gibbon's insolvency, including the loan of $450 on September 6, was $6,695.66. The defendants still hold Gibbon's unpaid notes, in amounts aggregating some $6,000, which were made before June 30, 1893.

The defendants rely upon the refusal of the judge to give the sixth request in the action of contract and the twelfth request in the action of tort. These are as follows: " 6. If Gibbon made the assignment of June 30, upon the understanding that he was to be allowed to borrow to the full value of the accounts and did so borrow, the plaintiff cannot recover." " 12. If the value of the goods transferred on June 30 did not exceed the advances made upon that date and subsequently upon the faith of said goods no preference was in fact given and the transfer is not voidable."

We are of opinion that both of these requests were properly refused. The contention of the defendants in favor of the rulings requested is a special finding of the judge " that on June 30, 1893, the alleged value of the collateral held by the defendants was equal to the indebtedness of Gibbon to the defendants." The judge however did not find that the actual value of the collateral held by the defendants on June 30 was equal to the indebtedness of Gibbon to the defendants, but merely that the alleged value was equal to such indebtedness. The findings of the auditor on this point are that before the transaction of June 30, the value of the collateral was $3,241.21 less than the indebtedness of Gibbon to the defendants. One of the defendants admitted on cross-examination, " that the collateral pledged on June 30th would go to secure prior indebtedness under the

old agreement between the parties, if there was an unsecured balance at that time." The judge also refused to find that the transaction of June 30, and the subsequent loans were made solely for the purpose of enabling Gibbon to continue his business, and found that the auditor's report had not been controlled by the evidence before the court.

The question therefore which the defendants seek to raise by these requests, based upon the assumption that before the transaction of June 30 the value of the collateral equalled the indebtedness of Gibbon to the defendants, does not arise. This question is thus stated in the defendants' brief: " The question intended to be raised is whether, if one, who is insolvent or in the contemplation of insolvency, pledges or mortgages property as security for a present loan, with the understanding that he can borrow to the full value of such collateral, and if he does so borrow, the pledgee or mortgagee can be held liable for the value of such goods."

If the transaction of June 30 was a fraudulent preference so far as the intention was to secure the pre-existing indebtedness, it was entirely voidable at the election of the plaintiff. *Denny* v. *Dana*, 2 Cush. 160, 172. *Lynde* v. *McGregor*, 13 Allen, 172, 181. *Forbes* v. *Howe*, 102 Mass. 427, 435. *Peabody* v. *Knapp*, 153 Mass. 242. *Whipple* v. *Bond*, 164 Mass. 182, 188. *Hill* v. *Marston*, 178 Mass. 285.

The defendants next contend that the requests numbered 11 and 17 in the tort case should have been given. The eleventh request is as follows: " The defendants have a lien upon the collateral to the amount of the other fresh loans made after June 30 upon the faith of the collateral pledged them." The seventeenth request was as follows: " If the contract and agreement between Gibbon and the defendants was that Gibbon was to be allowed to borrow upon any collateral held by defendants in excess of the indebtedness, and if Gibbon did so borrow, the defendants have a lien upon the collateral to the amount of the loans so made."

These requests were properly refused. The whole contract was tainted with fraud; and as was said by Mr. Justice Hoar in *Lynde* v. *McGregor*, 13 Allen, 172, 181: " But no authority has been found, and we cannot believe that any exists, for the

proposition, that where a contract expressly and intentionally fraudulent has been made, it is possible to give it a partial validity by any subsequent payment or advances in part, without rescinding the whole. If any part of the original purpose is fraudulent, the whole may be avoided, though made upon sufficient consideration. And in like manner if any part of the fraudulent purpose remains, it vitiates the whole." See also *Lamb* v. *McIntire*, 183 Mass. 367, 370.

The seventh request in the tort case, and the fourth request in the action of contract, were properly refused, as the judge expressly refused to find the facts upon which the requests were predicated. The same is true of the fourteenth and fifteenth requests.

*Exceptions overruled.*

*J. H. Sherburne, Jr.*, for the defendants.
*P. G. Bolster*, assignee, *pro se.*